PAXSON et al. v. BROWN et al.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1894.)

No. 261.

1. APPEAL—OBJECTIONS NOT RAISED BELOW—SECONDARY EVIDENCE.
Errors assigned in admission of secondary evidence cannot be considered on appeal where the only objection made at the trial was to an entire deposition, part of which was admissible, and there was no exception to the ruling thereon.

2. VENDOR AND PURCHASER—RECORD AS NOTICE—DESTRUCTION OF RECORD.
Mansf. Dig. Ark. §§ 670, 671, provides that the record of a deed as required by law shall be constructive notice "from the time the same is filed for record;" that the recorder shall indorse on every such deed the time "when the same is filed for record;" and that no deed for conveyance of real estate shall be valid against a subsequent purchaser for a valuable consideration, without actual notice thereof, unless such deed "shall be filed for record," as prescribed. Held, that proof of the existence of the recorder's certificate of filing, indorsed on a deed afterwards burned, is sufficient evidence that it had been "filed for record," and the burning of the record does not detract from the effect of such filing as notice to subsequent purchasers.

3. ASSIGNMENT FOR BENEFIT OF CREDITORS—PROPERTY CONVEYED—PARTNERSHIP REAL ESTATE.
An assignment by copartners for benefit of creditors granted "all the copartnership estate, property, assets, and effects, choses in action, claims, and demands," of the firm, and contained a covenant by them to execute and deliver such further instruments as might be lawful for accomplishing the objects expressed; and the schedule of assets attached included certain land in another state, which had been bought and paid for by the firm, and deeds thereof taken to one partner for convenience. Held, that all the legal title and equitable interest of such partner in the land were conveyed, and the covenant estopped him from ever claiming them.

4. ESTOPPEL IN PAIS — ACQUIESCENCE IN ASSIGNMENT FOR BENEFIT OF CREDITORS.
Such assignment was acquiesced in by the partner in whose name the deeds for the land were taken, for many years, during which the trust was fully executed, large sums having been expended by the assignees in protecting the title to the land, and it was purchased and paid for by third parties on the faith of the assignment, and the proceeds applied to

the payment of the debts of the firm. *Held* that, the assignment being valid at common law, such partner and his heirs, and those claiming under them with notice of the assignment, were estopped from claiming the land, as against purchasers from the assignees, on the ground of non-compliance with statutes relating to assignments, either of the state where the assignment was executed or of the state where the lands were situated.

5. BONA FIDE PURCHASER—NOTICE.

One knowing that certain lands were claimed by another, through a title derived from a former owner, purchased a quitclaim deed thereof from the latter's heirs. His agent, to obtain such deed, was informed by the heirs of assignments for creditors by their ancestor, and for many years neither he nor they had exercised ownership or claimed any interest in the land. *Held*, that the purchaser was put on inquiry for the contents of such assignments, and was chargeable with notice of all the facts disclosed by the record thereof.

6. ESTOPPEL — RECITAL IN DECREE — RELIANCE ON FALSE STATEMENT AS TO TITLE.

A recital in a decree that the party obtaining and recording it derives title to lands from a certain source does not estop one claiming under him from deraigning title from the true source, as against strangers to the decree, not purchasing under such party or in reliance on such recital.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

This was a suit by J. N. Brown against Charles Paxson and the Iowa & Arkansas Land Company to remove clouds on the title to certain lands. Complainant having died, the suit was continued in the names of Sarah Brown, Ida B. Brown, Mariah N. Glassgow, Sarah E. Kennedy, Nancy Gaston, and Bertha J. Klinskneith, a minor, by William Klinskneith, her next friend, complainant's widow and heirs, and a decree in their favor was rendered. Defendants appealed.

December 11, 1888, J. N. Brown filed a bill in the court below in which he alleged that he was the owner of certain unoccupied lands in St. Francis county, Ark.; that he derived his title from Barnett Graham, through a general assignment for the benefit of his creditors made by William G. Lane to Frederick N. Lawrence and L. M. Wiley, March 4, 1861; and that the appellants were making unfounded claims to own the same land, and had recorded certain deeds thereof, which constituted clouds upon the complainant's title, and he prayed that the title to these lands might be quieted in him, and the clouds removed. The appellants answered that the complainant, Brown, was not the owner of these lands; that they were; and that they derived their title from the heirs of Barnett Graham and from the heirs of William G. Lane; and prayed that the title to the lands be quieted in them, and that the deeds under which the complainant claimed be adjudged to be clouds on their title and removed. The complainant, Brown, died, and this suit was continued in the name of the appellees, his widow and heirs at law.

The appellees took the depositions of Frederick N. Lawrence, the sole surviving assignee of William G. Lane, and of Henry Vanderzee, who purchased these lands from the assignee. From these depositions it appeared that, while Barnett Graham had conveyed the lands to Lane, they were purchased and paid for by a copartnership styled "William G. Lane & Co.," of which he was a member; that the title was taken in his name for them, as a matter of convenience; that William G. Lane & Co. made a voluntary assignment for the benefit of their creditors to the same assignees as did William G. Lane, and on the same day; that the assignment of William G. Lane & Co. purported to convey these lands to the assignees, while that of William G. Lane did not; and that Henry Vanderzee, through whom the appellees claim title, pur-

chased them of Frederick N. Lawrence, as sole surviving assignee of William G. Lane & Co., and not as assignee of William G. Lane, but, through abundance of caution, took a deed from him as assignee of the firm, and also as assignee of Lane, the individual. Thereupon, May 1, 1892, the appellees filed an amended bill, deraigning their title through the assignment of William G. Lane & Co.; and the appellants answered, denying the validity of this title, and alleging that they were innocent purchasers for value from the heirs of Graham and from the heirs of Lane. A replication was filed, and, after final hearing, the court below rendered a decree for the appellees for the relief they sought.

It is conceded that Barnett Graham owned these lands. The title of the appellees is derived from him as follows: Barnett Graham and wife conveyed these lands by warranty deeds to William G. Lane, and these deeds were recorded in the county where these lands were situated. The lands were purchased by William G. Lane & Co., and William G. Lane had no beneficial interest in them except as a member of that firm. March 4, 1861, all the members of the firm of William G. Lane & Co. joined in a general assignment of their firm property to Frederick N. Lawrence and L. M. Wiley for the benefit of their creditors. The land in dispute was a portion of about 25,000 acres of Arkansas lands referred to in the schedule filed under this assignment. The assignment was made, filed, and recorded in New York City, where William G. Lane & Co. were conducting their business. This firm owed Henry Vanderzee $70,000, and he subsequently became practically the only creditor, and acted as the clerk of the assignees. He testifies positively that this assignment and the assignment of W. G. Lane were recorded in St. Francis county, Ark., and Lawrence, the assignee, testifies that he believes that they were so recorded, but that he has no documents to prove it. Subsequent to 1861, and during the war of the Rebellion, the records of St. Francis county were burned. L. M. Wiley died prior to 1873. Prior to that time, Lawrence, as assignee, expended about $10,000 in paying taxes upon these lands and redeeming them from forfeitures. In 1873 he sold them, as assignee of William G. Lane & Co., to Henry Vanderzee, and made a deed to him, as sole surviving assignee of William G. Lane, and as sole surviving assignee of William G. Lane & Co., which was dated January 7, 1873, and was recorded in St. Francis county, February 8, 1873. December 6, 1875, Vanderzee sold the lands in dispute in this suit to T. B. Mills for 50 cents an acre, and conveyed them to him by a deed which was dated on that day, and was recorded in St. Francis county, February 27, 1877. The title thus acquired by Mills passed by subsequent conveyances, duly recorded, to J. N. Brown, the original complainant in this action, prior to January 21, 1877.

The title of the appellants is derived from Barnett Graham as follows: Graham died prior to 1883. July 5, 1883, the widow and heirs of Graham made a deed of the lands in dispute to G. W. Miller, which was recorded in St. Francis county, September 29, 1883. August 8, 1883, the appellant Charles Paxson, as trustee for the Iowa & Arkansas Land Company, purchased these lands of Miller for $3,000, and the latter made a deed of them to Paxson, dated on that day, and recorded September 29, 1883. William G. Lane died in 1885. September 4, 1888, the appellant Paxson, as trustee, bought from the heirs of William G. Lane, for $600, a quitclaim deed of these lands, dated on that day, which was recorded October 24, 1888.

J. M. Moore and J. W. House filed a brief for appellants.

John B. Jones filed a brief for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The record in this case presents but a single question for our consideration; and that is whether or not the evidence read at the hearing below warrants the decree for the appellees.

We have not failed to notice that in the assignment of errors the appellants allege that the court below committed error in permitting a certain decree of the circuit court of St. Francis county, state of Arkansas, to be read in evidence, in permitting the assignments of William G. Lane and William G. Lane & Co. to be read in evidence, and in allowing the appellees to read in evidence the deposition of Joseph W. Martin. But rule 24 of this court (1 C. C. A. xx., 47 Fed. xi.) requires the brief of the appellant to contain:

"First. A concise abstract, or statement of the case, presenting succinctly the questions involved, and the manner in which they are raised."

The brief of the appellants fails to state how the questions suggested by these alleged errors of the court in admitting evidence were raised, and a careful perusal of the record discloses the fact that they never were raised at all. There is no exception to any ruling of the court on these questions, and the only objection to any of this evidence is to the entire deposition of Mr. Martin, "for incompetency and irrelevancy" simply. A portion of that deposition proves that the deeds from Barnett Graham to William G. Lane were destroyed by fire. That testimony was certainly competent and relevant to make parol proof of the contents of those deeds competent; hence the entire deposition could not have been rejected. It is true that in this deposition Mr. Martin testified that each of these deeds had a certificate of its record in St. Francis county attached to it, that seemed to be regular and to be made by the recorder of that county; but this portion of the deposition was not singled out and objected to on the ground that this was not the best evidence of the record of these deeds, nor was any objection made to it except the general objection to the entire deposition which we have quoted, and no exception was taken to the ruling upon that objection. The result is that these assignments of error are baseless. All the evidence in this record was before the lower court, and is before this court for its consideration. All objections that any of this evidence was not the best evidence of the fact sought to be established that the case permitted have been waived, and the secondary evidence, if any, must be considered in determining the issues. When secondary evidence is offered, opposing counsel may not stand by in silence and permit it to be introduced, and subsequently be heard to say that the fact it tends to prove is not established because the best evidence was not produced. In such cases it is not improbable that the best evidence would have been produced if objection had been made to the secondary evidence when it was offered; and if no objection is then made, while there is yet time to produce other evidence, counsel cannot be heard to object on that ground when it is too late to produce it.

We turn to the consideration of the only question remaining: Does the evidence warrant the decree for the appellees? The appellants maintain that it does not, on three grounds:

First. Because they were purchasers for a valuable consideration from Miller, the grantee of the heirs of Graham, without notice of any deed from Graham to Lane.

**Second.** Because the assignment of William G. Lane & Co. was insufficient to convey the title Lane obtained from Graham, and hence their deed from the heirs of Lane conveyed it to them.

**Third.** Because they are purchasers for a valuable consideration from the heirs of Lane, without notice of the assignment of William G. Lane & Co. to Lawrence and Wiley.

The first contention rests on the statutes of Arkansas (Mansf. Dig. §§ 670, 671), which provide that:

"Sec. 670. Every deed, bond, or instrument of writing, affecting the title in law or equity to any property, real or personal, within this state, which is or may be required by law to be acknowledged, or proved and recorded, shall be constructive notice to all persons from the time the same is filed for record in the office of the recorder of the proper county; and it shall be the duty of such recorder to endorse on every such deed, bond, or instrument, the precise time when the same is filed for record in his office.

"Sec. 671. No deed, bond, or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof, * * * unless such deed, bond, or instrument, duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and ex-officio recorder of the county where such real estate may be situated."

The contention is that Miller purchased of the heirs of Graham, and the appellant Paxson purchased of Miller in 1883, for a valuable consideration, without actual notice of the deeds from Graham to Lane made in 1860, and that the latter deeds were not recorded. But Mr. Martin testified that each of the deeds from Graham to Lane had the regular certificate of the recorder of St. Francis county that these deeds were recorded upon it, and that the deeds themselves have been burned. In the absence of objection that this was not the best evidence, this testimony was certainly competent, and it was sufficient evidence of the existence and of the contents of these certificates, in the absence of evidence to the contrary. The certificates then existed. It was the official duty of the recorder to indorse such certificates on all deeds filed for record in his office. Section 670, supra. His certificates thus made in the discharge of his official duty were competent evidence that these deeds had been filed for record. Parsons v. Boyd, 20 Ala. 112, 120; Dubose v. Young, 10 Ala. 365, 368; Thorp v. Merrill, 21 Minn. 336, 339. In this way the proof established the fact that the deeds from Barnett Graham to W. G. Lane had been filed for record prior to 1872, when they were burned; and under section 670, supra, they became constructive notice to Miller and the appellants of their contents from the time they were so filed. It is true that the record of these deeds had been burned, but that fact did not detract from the effect of their filing for record as notice, because the grantee, Lane, had done his whole duty when he filed them in the office of the recorder of the proper county to be recorded. From that time he was within the terms and the reason of the statute, while the rule of caveat emptor threw upon the purchaser from his grantor the burden of loss from fire, flood, or the carelessness of officials. Shannon v. Hall, 72 Ill. 354, 355; Gammon v. Hodges, 73 Ill. 140, 141; Heaton v.

Prather, 84 Ill. 330, 349; Fitch v. Boyer, 51 Tex. 336, 349; Armentrout v. Gibbons, 30 Grat. 632. It follows that neither Miller nor the appellants took any title under the deeds from the heirs of Graham, because Graham had no title when he died, and the original record of his deeds to Lane was constructive notice to Miller and the appellants in 1883, when they bought.

The second ground on which the appellants rely to reverse this decree is that, as against William G. Lane, the assignment of William G. Lane & Co. was insufficient to convey any title to these lands to the assignees, and through Lawrence, their survivor, to Vanderzee and the appellants claiming under him, because (1) it did not sufficiently describe the lands to identify and convey them; (2) the assignment statutes of New York (Laws N. Y. 1860, c. 348) were not complied with, in that the schedule of assets filed, as required by the statutes, within 20 days after the filing of the assignment, was not sworn to by the assignors, nor was any bond filed by the assignees before this land was sold; and (3) the statutes of Arkansas relating to general assignments for the benefit of creditors (Mansf. Dig. § 305) were not complied with, in that the assignees never filed any inventory of the assigned property in the office of the clerk of the court exercising probate jurisdiction in that state, nor gave any bond to the state of Arkansas, as required by those statutes, and in that the assignment itself provided that the assignees might sell the property assigned at public or private sale, while the statutes of Arkansas require assignees to make public sales of all such property.

So far as the sufficiency of the description in this assignment to convey this land is concerned, it must be borne in mind that the proof was that these lands were bought and paid for by the firm and deeds of them taken to William G. Lane from Barnett Graham for convenience. The assignment was executed by William G. Lane and all the other members of the firm of William G. Lane & Co., and by its terms the assignors "do hereby grant, assign, transfer, and set over unto the said parties of the second part all the copartnership estate, property, assets, and effects, choses in action, claims, and demands, whatsoever situated, of the said firm or copartnership of William G. Lane & Co.," in trust to sell the same at public or private sale, and to apply the proceeds to the payment of the debts of the firm; and they "hereby confer upon the parties of the second part all powers and authority necessary and proper for conveniently and effectually executing the trust hereby created, which it is lawful for them to grant to the said parties of the second part; and they hereby covenant to execute and deliver to the parties of the second part such further instruments as may be lawful for accomplishing the objects expressed by these presents, and as may be advised by counsel for that purpose." In the schedule of assets attached to this assignment, signed by William G. Lane and the other members of the firm, is this entry: "Land in St. Francis county, Arkansas, deed from Barnett Graham, cost $39,199.69." In our opinion, the grant contained in this instrument was ample to convey all the legal title and

all the equitable interest William G. Lane had in these lands, and the covenant was itself sufficient to estop him from ever claiming them.

. Was this assignment void for a failure to comply with the assignment laws of New York and Arkansas? So far as the mode of executing this instrument in order that it might convey this land in Arkansas was concerned, there is no doubt that the lex rei sitae—the law of that state—must govern. But a comparison of the assignment with the laws of that state in this regard demonstrates the fact that it was signed, sealed, and acknowledged in strict compliance with their provisions, and thus became an in-strument in writing affecting the title to real estate in that state, which was entitled to be recorded, under section. 670 of Mansfield's Digest.

So far as the objections that the assignors and assignees did not comply with all the provisions of the assignment laws of New York are concerned, we remark that there is no evidence in this record that the schedule of assets which the assignors filed in due time under the New York statutes was not sworn to; nor is the schedule itself in the record for our inspection; though there is a short abstract from it; nor is there any evidence that the assignees did or did not file the bond required by the New York statutes. It would seem in this barren condition of the record that the established facts that the assignees managed this prop-erty under the assignment for 12 years without objection, and that the surviving assignee sold and conveyed it as such, would raise the presumption that the statutes of New York were fully com-plied with in these respects, and that this was in all respects a valid assignment under the laws of New York. Acts done which pre-suppose the performance of other acts to make them legally operative are presumptive proof of the latter. Lincoln Tp. v. Cambria Iron Co., 103 U. S. 412, 416; Bank v. Dandridge, 12 Wheat. 64, 70; Omaha Bridge Cases, 10 U. S. App. 98, 189, 2 C. C. A. 174, 240, 51 Fed. 309, and cases cited; Union Water Co. v. Murphy Flat Flume Co., 22 Cal. 620, 629; City of Lincoln v. Sun Vapor Street Light Co., 59 Fed. 756, 8 C. C. A. 253.

It would seem, too, that the statutes of Arkansas relative to the filing of the inventory and the bond of the assignee relate to domestic assignments,—to assignments made in that state only,—and have no application to an assignment made in another state in accord-ance with its laws. Barnett v. Kinney, 147 U. S. 476, 483, 13 Sup. Ct. 403; In re Paige & Sexsmith Lumber Co., 31 Minn. 136, 138, 16 N. W. 700; May v. Bank, 122 Ill. 551, 556, 13 N. E. 806; Halsted v. Straus, 32 Fed. 279, 280; Bentley v. Whittemore, 19 N. J. Eq. 462.

But we do not propose to consider these questions. We rest this decision on broader ground. It is not material here whether or not this assignment might have been avoided by objecting creditors. It was a valid assignment at common law, and it was perfectly competent for the debtors, the assignees, and all the creditors to agree that the property of these debtors should be

conveyed to the assignees in trust to be sold at private sale, and that the proceeds thus realized should be applied to the payment of the claims of the creditors, without a compliance with the assignment laws of these states. These laws were enacted for the benefit of the parties to such assignments, but all of these parties might, by agreement, waive the benefit of such laws. This the parties to this assignment did. The debtors conveyed the property to the assignees to be sold for the benefit of the creditors. The assignees accepted and executed the trust. The creditors accepted the benefits of it, and received therefrom 20 per cent. of their claims. Can any of these parties, after the execution of this trust, and while they still retain the benefits derived from its execution, repudiate the assignment, and recover back from the purchaser the lands the proceeds of which they enjoyed? William G. Lane, the assignor, lived until 1885. Prior to 1873 the assignees had expended about $10,000 in paying taxes upon, and redeeming from forfeitures of, this land. Upon his purchase in 1873, Vanderzee paid more taxes, and, before Lane died, the title under this assignment had passed through mesne conveyances to Brown, the original complainant. Neither Lane, in his lifetime, nor his heirs, after his death, ever attempted to repudiate this assignment or to claim these lands. Vanderzee was a former partner of Lane. Lawrence, the assignee, was his brother-in-law. The relations between Lawrence and the heirs of Lane were intimate and cordial, and to their honor be it said that they refused to bring suit to recover these lands when solicited to do so by the agent of the appellants in 1888, and were only induced to execute their quitclaim deed to Paxson by the false representation that he desired this deed, not to attack, but to fortify, the title under their uncle, the assignee. These heirs stood in the shoes of William G. Lane. This is a suit in equity. Could Lane, who was originally only the naked trustee of this title for his firm, have sustained any claim to this land in 1885, before his death, as against the purchasers under this assignee, after he (Lane) had made this assignment and had acquiesced in it for 24 years, until the trust it declared was fully executed, until more than $10,000 had been expended in protecting the title to the land, until the land had been purchased and paid for by third parties on the faith of the assignment, and the proceeds applied to the payment of the debts of the firm, because the provisions of these assignment statutes to which we have referred were not strictly complied with? We think not.

No principle is more salutary, none rests on more solid foundations, than that one who by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence, induces another to believe certain facts to exist, and the latter rightfully acts on such a belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial. This principle is salutary, because it represses fraud and falsehood. It rests on the solid foundation of our common sense

of justice, which revolts at the idea of rewarding the intentional or culpably negligent deceiver at the expense of the innocent pur-chaser who believed him. Cairncross v. Lorimer, 3 Macq. 828; Dickerson v. Colgrove, 100 U. S. 578, 582; Kirk v. Hamilton, 102 U. S. 68, 75; Evans v. Snyder, 64 Mo. 516; Pence v. Arbuckle, 22 Minn. 417; Crook v. Corporation of Seaford, L. R. 10 Eq. 678; Faxton v. Faxon, 28 Mich. 159.

In Cairncross v. Lorimer, supra, Lord Campbell said:

"The doctrine * * * is to be found, I believe, in the laws of all civ-ilized nations, that if a man, either by words or by conduct, has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not have been lawfully done without his con-sent, and he thereby induces others to do that from which they otherwise might have abstained, he cannot question the legality of the act he had so sanctioned, to the prejudice of those who have so given faith to his words or to the fair inference to be drawn from his conduct."

In Dickerson v. Colgrove, supra, B. and C. were the sole heirs of the former owner of certain lands. C. conveyed them to D. Two years later D. wrote to B., and asked him if he made any claim to the premises. B. wrote to C.:

"You can tell D., for me, he need not fear anything from me. * * * You can claim all there. This letter will be enough for him. I intended to give you and yours all my property there, and more, if you need it."

D. learned the contents of this letter, and then conveyed the lands by warranty deeds to E. and others, who took possession. In an action of ejectment brought by the grantee of B., his letter was held to be an estoppel and a complete defense for the grantees of D.

In Evans v. Snyder, supra, the heirs of William Snyder, Sr., who died seised in fee of certain lands, brought ejectment against the purchasers thereof under an administrator's sale, and proved that there had never been any order of sale, and this was held to be a fatal defect, on the ground that such an order occupied the same relation to an administrator's sale that a judgment does to an execution sale. But the facts that this sale was made in 1866, that the proceeds of it were applied to relieve from incumbrances other lands that the heirs still retained, that no action was brought by them until 1873, and that meanwhile the purchaser had con-veyed the lands by warranty deed, and they had been placed under cultivation, were held to completely estop them from claiming any title to these lands.

Upon the principle illustrated by these authorities, neither Lane nor his heirs ever had any claim to these lands at law or in equity as against the complainant, Brown, after he obtained his deed in 1876, even if the assignment was originally so fatally defective that it might have been avoided by objecting creditors, or repudiated by prompt action on the part of Lane himself. His original con-veyance to the assignees, his silence for so many years, while they were spending thousands of dollars to protect the title, while Van-derzee and the successive grantees under him bought the land and paid the taxes upon it on the faith of this assignment and Lane's

long acquiescence in it, and in the sale under it by the assignee, completely estop him and his heirs from making any claim to these lands.

Finally, the appellants contend that, even if the heirs of Lane could not have maintained any claim here, they are purchasers of the lands for a valuable consideration, without actual notice of the assignment by William G. Lane & Co., which they aver was not recorded in Arkansas, and hence are protected by the Arkansas recording statute. Mansf. Dig. § 671.

But an examination of the record discloses ample testimony to warrant the finding that this assignment was recorded in St. Francis county. One witness testifies positively and another with some hesitation that it was so recorded, and there is no testimony to contradict this evidence. Nor do we think, if it be conceded that it was not recorded, that there is such a lack of evidence of notice to these appellants of its existence and contents as would warrant us in reversing the finding of the court below that they were chargeable with such notice. Where the court below has considered conflicting evidence, and made its finding and decree thereon, they must be taken as presumptively correct; and unless an obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand. Warren v. Burt, 58 Fed. 101, 106, 7 C. C. A. 105; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355; Evans v. Bank, 141 U. S. 107, 11 Sup. Ct. 885; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821.

Notice of facts and circumstances sufficient to put a purchaser of land upon inquiry is notice of all the facts that an honest and diligent inquiry would disclose, and notice to the agent delegated to negotiate the purchase is notice to the principal. The appellant Paxson purchased the quitclaim deed of these lands, on which the appellants rely, of the heirs of Lane, for $600, in the year 1888, through an agent, Williams, who conducted the negotiations for him in the city of New York. It is true that Paxson and Williams both testified that they had no notice of the conveyance of these lands through the assignment of William G. Lane & Co., but the proof is plenary that they knew that the complainant, Brown, claimed to own them through a title derived from Lane. The deed by Lawrence to Vanderzee, under which Brown claimed, was recorded in St. Francis county, and recited that Lawrence conveyed as assignee of William G. Lane and as assignee of William G. Lane & Co. Before the purchase was completed, Mr. Albert Lane, who represented the heirs, informed the agent, Williams, that William G. Lane had made three assignments,—one individually, one as a member of the firm of William G. Lane & Co., and one as a member of the firm of Lanes, Boyce & Co. These items of information, and the patent fact that for 27 years neither Lane nor his heirs had ever exercised any acts of ownership or claimed any interest in these lands, constituted ample notice to put any intending purchaser on inquiry for the contents of all the assignments William

G. Lane had signed, and it is patent that a diligent and honest inquiry must have disclosed all the facts established by the record in this case.

It has not escaped our attention that counsel for appellants claim that the appellees are estopped to claim title to these lands under the assignment of William G. Lane & Co. because Vander- zee caused a decree of the circuit court of St. Francis county, Ark., to be recorded in that county in 1874, which recited that he derived title to these lands through the individual assignment of William G. Lane. If the appellants had believed the recital in that decree, and, in reliance upon it, had bought these lands of Vanderzee or his grantees, the latter might well have been estopped to set up, against either the appellants or those claiming under them, an adverse title to these lands through the assignment of William G. Lane & Co. The authorities cited by counsel for appel- lants to sustain their contention here are of this character, but the appellants here refused to believe or to rely upon the statements in this decree, and they bought their quitclaim deed of the heirs of Lane because they disbelieved and refused to rely upon these statements regarding the title of Vanderzee. Here was no estoppel. The indispensable element of belief in and reliance upon the false representations is wanting. Moreover, against a stranger, a de- cree obtained and recorded by Vanderzee in 1874, which deraigns his title from a false source, could not estop the complainant, Brown, who acquired title under him in 1876, from deraigning his title from its true source.

And, finally, the doctrine of estoppel was not available to the appellants in this case, in any event. In delivering the opinion of the supreme court in Dickerson v. Colgrove, 100 U. S. 580, Mr. Justice Swayne well said of an estoppel in pais:

"This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond that limit."

The heirs of Lane had no title to these lands in 1888, when the appellants purchased from them for $600. Thousands of dollars had been expended in paying the taxes upon and purchasing the title to these lands by those who had held them adversely under the deed of Lane for 27 years. The appellants cannot be per- mitted to use this beneficent doctrine of estoppel to divest the owners of these lands of their title, and to create in themselves a title their grantors never had and refused to claim. Manifestly, such a use of this doctrine would neither promote the ends of jus- tice nor accomplish that which ought to be done between man and man. The decree below was right, and it must be affirmed, with costs.

It is so ordered.