UNION PAC. RY. CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 6, 1895.)

No. 307.

1. ESTOPPEL AGAINST THE UNITED STATES.

A suit in which the United States has no interest, and in which it is under no obligation either to the public or to the party for whose benefit the suit is brought, can be sustained no better in the name of the United States than in the name of the real party in interest; and an estoppel which would operate against the rights of such party will bar recovery, notwithstanding that the United States is the formal complainant. U. S. v. Winona & St. P. R. Co. (No. 564) 67 Fed. 948, followed.

2. SAME—PUBLIC LANDS—SUIT TO CANCEL RAILROAD GRANTS.

Certain lands were excepted out of a railroad grant because a pre-emption claim had attached thereto at the time of a definite location of the road. Subsequently, the pre-emptioner relinquished his claim, and the land was sold by the railroad company, and the title conveyed by it was at length obtained by one W. for his wife, and they took possession under their deed. They, however, concealed from the railroad company and from the United States that they had bought the railroad title; and afterwards W. made a homestead entry upon the land, which entry, after a contest before the land department with the railroad company, was canceled, and a patent was issued to the railroad company. W. having died, his wife caused the deed conveying the railroad title to her to be recorded, thus showing a perfect chain of title from the United States

through the railroad company to herself. She then procured an abstract of this title, and, upon the faith of it, procured from an investment company a loan secured by a mortgage of the land. Afterwards, with the purpose of discharging the land in part at least from the lien of the mortgage, she petitioned the United States, through the land office, to bring a suit to cancel the patent to the railroad company on the ground that she and her children, as heirs of W., were entitled to the land under her husband's homestead entry, and this suit was accordingly brought. *Held*, that she was estopped to set up this claim as against the mortgage, and that the United States had no interest to protect or governmental duty to perform, and hence that the suit instituted in its name was for her benefit alone, for which reason the estoppel operated as a bar to the suit, notwithstanding that the United States was the complainant.

Appeal from the Circuit Court of the United States for the District of Kansas.

This is an appeal from a decree in favor of the United States which annulled a patent of 160 acres of land to the appellant the Union Pacific Railway Company, upon the title evidenced by which a mortgage for $2,200, which was held by the appellant William Dalrymple, rested. The case was heard below upon the bill exhibited by the United States and the answers of the railway company. When a suit in equity is heard on the bill and the answers, the material allegations of the answers must be taken to be true, and the averments of the bill that are denied by the answers to be false. Leeds v. Insurance Co., 2 Wheat. 380, 384; U. S. v. Trans-Missouri Freight Ass'n, 7 C. C. A. 15, 82, 58 Fed. 58. Under this rule the material facts in this case are these: By the act of July 1, 1862 (12 Stat. c. 120, §§ 3, 9, pp. 489, 492, 494), and the various acts amendatory thereof, the United States granted to the Leavenworth, Pawnee & Western Railway Company of Kansas, a corporation, certain of the public lands, to aid in the construction of a railroad and telegraph line from the Missouri river, at the mouth of the Kansas river, to a place of connection with the Pacific Railroad of Missouri on the one hundredth meridian west of Greenwich, described in that act. The original grant, so far as it is material to this case, was in these words: "That there be, and is hereby, granted to the said company, for the purpose of aiding in the construction of said railroad and telegraph line, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores thereon, every alternate section of public land, designated by odd numbers, to the amount of five alternate sections per mile on each side of said road, on the line thereof, and within the limits of ten miles on each side of said road, not sold, reserved or otherwise disposed of by the United States, and to which a preemption or homestead claim may not have attached, at the time the line of said road is definitely fixed." The act of July 2, 1864, also provided that whenever 40 consecutive miles of any portion of said railroad and telegraph line was completed, as required by the act, patents should be issued conveying the right and title to said lands to the company on each side of the road as far as the same was completed. By the act of July 2, 1864 (13 Stat. c. 216, § 4, pp. 356, 358), section 3 of the act of July 1, 1862, was amended by striking out the word "five" wherever it occurs, and inserting in lieu of it the word "ten," and by striking out the word "ten" wherever it occurs, and inserting in place of it the word "twenty."

The name of the Leavenworth, Pawnee & Western Railroad Company of Kansas was subsequently changed to the Union Pacific Railway Company, Eastern Division, then to the Kansas Pacific Railroad Company, and the company was finally consolidated with the Union Pacific Railway Company, the appellant, which has succeeded to all the rights this railway company acquired under any of its names. The railroad company earned its grant by the timely and fit construction of its railroad and telegraph line. The 160 acres of land in controversy here was a part of an odd section within the place limits of the grant to this company by the acts we have mentioned. On May 8, 1867, the railroad company filed its map of the definite location of the line of its railroad opposite to this land. On April 14, 1866, one James S. Grier, who was a minor 20 years of age, filed his declaratory statement upon this land

in the proper land office, by which he alleged that he had settled thereon under the pre-emption laws. On August 12, 1868, he relinquished his pre-emption claim to this land. On September 10, 1868, the railroad company sold and conveyed this tract of land by a warranty deed to one James Waddle. On February 10, 1871, Almer Weller bought the land of Waddle, and the latter conveyed it by warranty deed either to him or to his wife, Hannah E. Weller. Thereupon Weller and his wife took possession of the land under this deed, and have ever since retained it. They concealed from the railroad company and from the United States the fact that they had bought the title Waddle received from the railroad company; and on October 9, 1871, Weller made a homestead entry upon the land, which was on October 22, 1875, after a contest and trial before the land department of the United States of the claims of Weller and the railroad company, canceled by the commissioner of the general land office. On December 31, 1877, the United States issued a patent of this land to the railroad company. At some time prior to September, 1886, Weller died intestate, and left his wife, Hannah E. Weller, and five children, his sole surviving heirs; and Hannah E. Weller recorded in the county in which this land was situated the deed of February 10, 1871, from Waddle, which then ran to her, so that there appeared of record a perfect chain of title from the United States through the railroad company and Waddle to herself. She was still in possession of the land, and she then procured an abstract of this title, and, for the purpose of procuring a loan upon the security of her title to the land, furnished it to the Lombard Investment Company, a corporation, which, in reliance upon the abstract, the record title, and her possession, and without notice of any defect in this title, loaned to Hannah E. Weller, at her request, $2,200 upon the security of her mortgage upon this land. This mortgage was dated September 1, 1886. It contained full covenants of warranty of the title, and secured the payment of a promissory note of $2,200 made by Hannah E. Weller, and payable to the Lombard Investment Company. On September 25, 1886, the appellant William Dalrymple purchased and paid a valuable consideration for this note and mortgage in good faith, without notice of any defects in the title disclosed by the abstract. According to the answers of the railroad company and Dalrymple, which stand admitted in this case, Hannah E. Weller knew all these facts; but she did not disclose to the United States the fact that she or her husband had procured the title of Waddle under the patent to the railroad company. But for the purpose of discharging the land in part at least from the lien of the mortgage, and of preventing the appellant Dalrymple from collecting the amount owing to him on this mortgage debt, she petitioned the United States, through the general land office, to bring this suit to cancel the patent to the railroad company on the ground that she and the other heirs of Weller held the possession of, and were entitled to the title to, the land under the homestead entry made by her husband in 1871 only, and she thereby induced the United States to bring and prosecute this suit. The United States has no interest in the suit, and the real parties to the controversy are Hannah E. Weller and William Dalrymple, the holder of her mortgage.

Henry P. Lowenstein (A. L. Williams, John C. Gage, Watson J. Ferry, Charles E. Small, and N. H. Loomis, on the brief), for appellants.

W. C. Perry, U. S. Atty.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The principles announced in U. S. v. Winona & St. P. R. Co. (No. 564) 67 Fed. 948, are decisive of this case. The terms of the grant under the act of July 1, 1862 (12 Stat. c. 120, §§ 3, 9, pp. 489, 492, 494), differ in no particular, essential to the decision of this case, from those considered in that case. 11 Stat. 195.

Conceding, but not deciding, that the filing of the declaratory state-
ment of Grier was sufficient evidence that pre-emption rights had at-
tached to the land in controversy here, when the line of the railroad
was definitely fixed opposite to it, it follows from the views expressed
in that case (1) that this land was excepted from the grant to the rail-
road company; but (2) that the land was within the jurisdiction, and
its disposition within the power, of the land department of the United
States, and the patent to the railroad company issued by that depart-
ment was not void, but it conveyed the legal title to the railroad com-
pany and its grantees; (3) that the appellant Dalrymple was a bona
fide purchaser of a mortgage for $2,200, which is a lien upon all that
legal title that Hannah E. Weller acquired through the deed from
the immediate grantor of the railroad company; and (4) that the
equitable rights of a bona fide purchaser are superior in a case of
this character to the equitable claims of the United States to have
the title restored to it, and constitute a complete defense to this suit.

There is another fatal objection to the maintenance of this suit. It
is that this is a suit in which the United States has no interest to pro-
tect, and no governmental duty to perform, and that it is prosecuted
in its name at the instigation and in the interest of a private indi-
vidual, to obtain relief that she is estopped from recovering in her own
name by every principle of law and of equity. It was instituted and
is prosecuted at the instigation and on the petition of a mortgagor to
annul a title upon which she obtained a loan of $2,200 upon the faith
of her representation that she had a perfect title to the land. The
patent was issued in 1877. It is claimed in this suit that Almer
Weller, the husband of Hannah E. Weller, the mortgagor here, was
entitled to the legal title to this land under his homestead entry.
Either Almer or Hannah had this legal title under the patent through
the deed from Waddle from the time the patent was issued, and
during all this time they were in possession. If Almer had the
title, of what could he complain? If Hannah, his wife, had it, she
undoubtedly had it with his consent. If not, he could have main-
tained a suit in equity at any time during his life, and his heirs
could have maintained one at any time since his death, for a decree
that Hannah held this legal title in trust for him or for them. Bogan
v. Mortgage Co., 11 C. C. A. 128, 63 Fed. 192, and cases cited. Almer
Weller made no complaint regarding this title from 1877 until he
died. None of his heirs except Hannah have ever complained of it
since. Hannah, who, according to the records of the county in
which the land is situated, has held this legal title since 1877, never
complained because she held it until after she had borrowed the
$2,200, and then, not for the purpose of strengthening her own title,
but to weaken the security of the loan she had procured, and to
defeat its collection. To obtain this loan, she caused a deed to her-
self of the title under the patent to the railroad company to be re-
corded, and she presented to the mortgagee an abstract which dis-
closed a perfect title in her under the patent to the railroad com-
pany. She was then in possession of the land; and if the claim she
now makes, that she was not entitled to this land, but that it be-
longed of right not to her alone, but to her and her children, the

heirs of Almer Weller, under his homestead claim, is well founded, she knew that fact, and concealed it from the mortgagee in·1886, when she induced it to loan its money on the faith of the perfect title her abstract and possession disclosed. She cannot be heard to assert that fact now to defeat this mortgage in the hands of a bona fide purchaser.

In Paxson v. Brown, 10 C. C. A. 135, 143, 61 Fed. 874, this court declared:

"No principle is more salutary, none rests on more solid foundations, than that one who, by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter rightfully acts on such a belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial. This principle is salutary, because it represses fraud and falsehood. It rests on the solid foundation of our common sense of justice, which revolts at the idea of rewarding the intentional or culpably negligent deceiver at the expense of the innocent purchaser who believed him. Cairncross v. Lorimer, 3 Macq. 828; Dickerson v. Colgrove, 100 U. S. 578, 582; Kirk v. Hamilton, 102 U. S. 68, 75; Evans v. Snyder, 64 Mo. 516; Pence v. Arbuckle, 22 Minn. 417; Crook v. Corporation of Seaford, L. R. 10 Eq. 678; Faxton v. Faxon, 28 Mich. 159."

Upon this principle, the mortgagor, Hannah E. Weller, was estopped to maintain a suit to defeat or weaken the lien of this mortgage, and we think in this case the government is in the same position.

It is not denied that, if the United States was prosecuting this suit to enforce the rights or to protect the interests vested in it as a sovereign government, it might not be affected by the equitable estoppel which bars this mortgagor. U. S. v. Winona & St. P. R. Co. (No. 566) 67 Fed. 948, and cases cited. But that is not the position of the United States in this case. The government has no interest in this suit. If this decree is affirmed, the United States will become a mere conduit to pass the legal title to this land from Hannah E. Weller to Hannah E. Weller and the children of her husband. The government can receive no purchase price for the land, nor can it retain the land itself. Moreover, the uncontradicted averments of the answers are that this suit was instigated by this mortgagor for the sole purpose of defeating the collection of her mortgage debt; that she induced the government to institute it by filing a petition which did not disclose the essential fact that either she or her husband held the legal title under the patent she asked the government to set aside; and that the only real parties in interest in this suit are this mortgagor and William Dalrymple, the assignee of this mortgage. Private parties cannot be permitted under such circumstances to use the name of the United States to shield themselves from the just consequences of their own acts, or to deprive bona fide purchasers of their defenses in equity. A suit in which the United States has no interest, and in which it is under no obligation to the public or to the party for whose use the suit is brought and prosecuted, can be sustained no better in the name of the United States than in the name of the real party in interest. Individuals cannot in that way avail themselves of the privileges and exemptions which are bestowed upon the government, not for the benefit of private parties, but for the protection of the interests of the public.

and to enable the United States to discharge its duties and obligations as a sovereign government. U. S. v. San Jacinto Tin Co., 125 U. S. 273, 285, 8 Sup. Ct. 850; U. S. v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083; Curtner v. U. S., 149 U. S. 662, 13 Sup. Ct. 985, 1041.

The decree below must be reversed, and the case remanded, with directions to dismiss the bill; and it is so ordered.