UNITED STATES v. DES MOINES VALLEY R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit.   December 13, 1897.)

No. 816.

1. PUBLIC LANDS—GRANTS TO STATES FOR PUBLIC WORKS—ERRONEOUS CERTI-
FICATION—CONFIRMATION.
     Under the act of March 3, 1871 (16 Stat. 582), whereby the United States
confirmed to the state of Iowa and its grantees certain lands erroneously
certified to the state by the secretary of the interior, under the grant of
July 12, 1862, for aiding in the improvement of the Des Moines river (12
Stat. 543), the United States is estopped from asserting any claim or right to
such lands.

2. SAME.
     In an act confirming to a state lands erroneously certified to it under a
grant for internal improvements, a proviso that nothing in the act shall be
construed as to adversely affect any existing right or title, or right to ac-
quire title, under the homestead and pre-emption laws, etc. (Act March
3, 1871; 16 Stat. 582), does not reserve to the United States the privilege
of itself asserting the rights of homestead claimants.

3. JUDGMENTS—ESTOPPEL AGAINST UNITED STATES AS FORMAL PARTY.
     In a suit in which the government has no interest, but which is brought
in its name by a private party, to enforce his own rights, a prior adjudica-
tion by a state court, determining the same issues adversely to him, is
available as a defense, notwithstanding the formal presence of the United
States as party.

Appeal from the Circuit Court of the United States for the North-
ern District of Iowa.

On March 6, 1893, the United States of America exhibited its amended bill
of complaint against the Des Moines Valley Railroad Company, James O. West,
and Sylvester M. Fairchild, the appellees, wherein it prayed that a certificate
whereby the secretary of the interior certified certain lands to the state of
Iowa, and a patent for said lands subsequently granted by the state to the
Des Moines Valley Railroad Company, and several mesne conveyances where-
by said lands had ultimately been conveyed to James O. West, one of the ap-
pellees, might each be canceled, set aside, and held for naught, and that said
James O. West be forever estopped from asserting a title thereto under the
aforesaid certificate, patent, and mesne conveyances.   The lands which are
affected by the bill of complaint are situated in Dickinson county, Iowa, the
same being the N. ½ of the N. E. ¼ and lot No. 3, all in section 26, township
99, N., of range 37 W. of the fifth P. M.
     The controversy arises out of certain congressional legislation in aid of the
improvement of the navigation of the Des Moines river, which legislation be-
gan with a grant of lands in aid of the improvement of the river, which was
made by the United States to the state of Iowa on August 8, 1846.   9 Stat.
77, c. 103.   Several acts relative to the subject were passed at various times
between August 8, 1846, and March 3, 1871, but the material facts, so far as
they are relevant to the present controversy, may be stated as follows:   By an
act approved on July 12, 1862 (12 Stat. 543, c. 161), congress extended the
original grant of 1846 so as to include in the grant to the state in aid of the
improvement of the navigation of the Des Moines river every alternate section
of land designated by odd numbers lying within five miles of the river between
the Raccoon Fork of the river and the northern boundary line of the state
of Iowa.   Prior to that time the original grant had been construed as not ex-
tending above the Raccoon Fork.   Railroad Co. v. Litchfield, 23 How. 66.
On the assumption that certain lands which would fall within the extended
river grant had been sold or otherwise disposed of by the United States prior
to the extension of the grant, congress, by the act of July 12, 1862, authorized
the secretary of the interior to set apart an equal quantity of other lands
within the state of Iowa to make good such deficiency.   Under such authority
a large quantity of land, including the tract of land now in controversy, was

set apart by the secretary of the interior, and certified to the state of Iowa on June 14, 1866, to supply a deficiency in the extended river grant which was supposed to have been created by a grant made to the state of Iowa on May 15, 1856, to aid in the construction of a railroad from Dubuque, Iowa, to Sioux City, Iowa. 11 Stat. 9, c. 28. The lands which were so certified to the state were subsequently patented by the state to the Des Moines Valley Railroad Company, the lands in controversy in this action having been so patented on February 25, 1869. It was subsequently decided, however, that no deficiency was created in the extended river grant by the act of May 15, 1856, above cited, for reasons which are fully stated in Wolcott v. Des Moines Co., 5 Wall. 681; also in Homestead Co. v. Valley Railroad, 17 Wall. 153; and that the assumption which had led to the selection and certification of lands to the state on June 14, 1866, was erroneous. Nevertheless, congress saw fit to confirm the action which had been taken by the secretary of the interior on June 14, 1866, under the act of July 12, 1862, by another act approved on March 3, 1871 (16 Stat. 582, c. 129), which latter act provided: "That the title to the land certified to the state of Iowa by the commissioner of the general land office of the United States under an act of congress entitled 'An act confirming a land claim in the state of Iowa, and for other purposes,' approved July 12, eighteen hundred and sixty-two, in accordance with the adjustment made by the authorized agent of the state of Iowa and the commissioner of the general land office, on the twenty-first day of May, Anno Domini, eighteen hundred and sixty-six, and approved by the secretary of the interior on the twenty-second day of May, Anno Domini, eighteen hundred and sixty-six, and which adjustment was ratified and confirmed by act of the general assembly of the state of Iowa approved March thirty-one, eighteen hundred and sixty-eight, be, and the same is, hereby ratified and confirmed to the state of Iowa, and its grantees, in accordance with said adjustment and said act of the general assembly of the state of Iowa: provided, that nothing in this act shall be so construed as to affect adversely any existing legal rights, or the rights of any party claiming title, or the right to acquire title, to any part of said lands under the provisions of the so called homestead or pre-empted laws of the United States, or claiming any part thereof as swamp lands." James O. West, one of the appellees, by virtue of mesne conveyances, became, on February 9, 1885, and still remains, the owner of whatever title to the land in controversy was granted to the state of Iowa, and by the state to the Des Moines Valley Railroad Company, under and by virtue of the acts of congress aforesaid, and the action of the land department thereunder. Sylvester M. Fairchild, one of the appellees, also lays claim to the property in controversy, his title thereto being deraigned as follows: He filed a pre-emption claim against the land on August 24, 1865. On September 29, 1866, he relinquished his pre-emption claim, and on October 3d of that year entered it as a homestead, and received a receiver's receipt. Fairchild made his final proof as a homesteader on October 25, 1871, and on September 26, 1876, a patent in his favor was issued by the United States, which was duly recorded on October 15, 1884, in the county of Dickinson, Iowa, where the land in controversy is situated. On February 22, 1876, James Stuart and Joseph Stuart, who were then the owners of the railroad title to the land in dispute, and under whom James O. West, the appellee, now claims, filed a suit in the district court of Dickinson county, Iowa, against Sylvester M. Fairchild, the appellee, and his wife, Helen J. Fairchild, to quiet their title to said land as against the claim of Fairchild and wife. An answer was filed by the defendants, wherein they asserted a title to the land under and by virtue of the aforesaid homestead entry of October 3, 1866, and the final proof which was made thereunder on October 25, 1871. This case went to a final decree in the state court on November 16, 1876, whereby it was adjudged and determined that the plaintiff's claim to the land "be established against any and all adverse claims of the defendants, and that said defendants, to wit, S. M. Fairchild and Helen J. Fairchild, be barred and forever estopped from having or claiming any right or title to the premises * * * adverse to plaintiffs." Fairchild and wife subsequently took possession of the land in controversy, notwithstanding the prior decree in favor of the Stuarts, whereupon the appellee James O. West, who had then become the owner of the property, brought an action of ejectment against them to the March term,

1885, of the district court of Dickinson county, Iowa. In this latter suit Fairchild and wife again pleaded the title which they had before asserted in the suit which was brought against them by the Stuarts. They also filed a cross petition in the case, setting up their title under the homestead entry, and praying that, in view thereof, it might be decreed that they were the absolute owners of the property in controversy. This suit, however, resulted, as before, in a judgment in favor of the plaintiff, which was rendered on October 2, 1885, whereby it was adjudged, in substance, that James O. West was the owner in fee of the property in dispute, and that he have and recover the possession thereof from the defendants S. M. Fairchild and Helen J. Fairchild. An appeal was taken from the latter judgment to the supreme court of the state of Iowa, but said appeal was dismissed, on motion of the appellee, on December 23, 1886. The case comes to this court on an appeal taken by the United States from a decree rendered by the circuit court of the United States for the Northern district of Iowa, dismissing the bill of complaint. 70 Fed. 435.

C. H. Childs (Cato Sells, U. S. Atty., on the brief), for the United States.

Craig L. Wright (A. F. Call and E. H. Hubbard, on the brief), for appellee Des Moines Val. R. Co.

J. F. Duncombe, W. S. Kenyon, George H. Carr, and A. C. Parker, for appellee James O. West.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The circuit court reached the conclusion—in which view we fully concur—that this action was brought for the sole purpose of quieting the title to a specific tract of land, which is claimed, on one hand, by the defendant Fairchild by virtue of his homestead entry, and, on the other hand, by the defendant West by virtue of the certification of the land to the state of Iowa on June 14, 1866, and the patent therefor which was subsequently granted by the state to the Des Moines Valley Railroad Company. It is clear, we think, that the government has no interest in the land to be either conserved or protected, and that it has simply permitted Fairchild to use its name as the nominal plaintiff, to the end that his title under the homestead laws may be established at the expense of the title which is asserted by West. The bill does not attempt to conceal the fact that the United States has no pecuniary interest in the controversy, and that its real purpose is to champion the cause of Fairchild, rather than to assert a title of its own, since it is alleged in the bill that the certificate in favor of the state of Iowa, and the patent to the Des Moines Valley Railroad Company, and the various mesne conveyances under which West claims, all of which it seeks to have set aside and annulled, "are a cloud upon the title of said Fairchild, and have prevented, and do prevent, the United States from giving to said Fairchild that full and indisputable title which is his right." Moreover, the act of March 3, 1871, above quoted in the statement, was passed and approved some years after the decision in Wolcott v. Des Moines Co., 5 Wall. 681, had been promulgated, wherein it was decided, in effect, that the secretary of the interior had erroneously executed the certificate of June 14, 1866, because the railroad grant of May 15, 1856 (11 Stat. 9, c. 28), did not

dispose of any of the lands which fell within the extended river grant of July 12, 1862, and therefore did not create a deficiency in the latter grant such as the secretary of the interior was authorized to make good by setting apart other lands in their place.    In other words, congress, with full knowledge of the erroneous action of the land department in the year 1866, saw fit, in the year 1871, to ratify and confirm the title of the state to such lands as it had acquired by reason of such erroneous action of the officers of the land department.    It seems obvious, therefore, that the United States, by the act of March 3, 1871, voluntarily relinquished whatever right or title to the land in controversy it then had; that it did so with full knowledge of its rights; and that the sole purpose of that act was to cure an existing defect in the state's title, and to estop the United States from ever after taking advantage of such defect for its own benefit.    It is argued, however, that by reason of the proviso contained in the act of March 3, 1871, the government reserved to itself the right to challenge the title of the state of Iowa, and those claiming under it, to the particular tract of land now in controversy, because Fairchild entered the land as a homestead on October 3, 1866.    We cannot assent to this proposition.    We fully concur in the view of the learned trial judge that the proviso in question did not reserve any interest in the land, so far as the United States was concerned, but was simply intended to leave homestead, pre-emption, and swamp-land claimants unaffected by the government's relinquishment of its own rights.    By the act in question congress declared, in effect, that the United States would not thereafter, for its own benefit, question the title to the lands which had been erroneously certified to the state; that the state should hold the lands free from all claims on the part of the government, but subject to such legal rights, if any, as had at the time become vested in any homestead, pre-emption, or swamp-land claimant.    It results from these views that, if the present action can be said to have been properly instituted in the name of the United States, as to which question we express no opinion, the action must, in any event, be regarded as one which is brought for the sole benefit of Fairchild, and not for the purpose of redressing any wrong which has been done to the United States, or of recovering any property in which it now retains an interest.

Such being the attitude of the United States with respect to the litigation, the case falls within the rule, which has frequently been applied, that, where the government lends its name as a plaintiff in a suit, not to enforce any public right, or to protect any public interest, title, or property, but merely to enable one private person to maintain a suit against another in its name, a court of equity will hold  ie nominal plaintiff, even though it is the United States, subject to the same defenses which exist and might be pleaded as against the real party in interest if he were suing in his own name.    U. S. v. Beebe, 127 U. S. 338, 347, 8 Sup. Ct. 1083;  U. S. v. Des Moines Nav. & Ry. Co., 142 U. S. 510, 539, 12 Sup. Ct. 308;  Curtner v. U. S., 149 U. S. 662, 672, 13 Sup. Ct. 985, 1041;  Union Pac. Ry. Co. v. U. S., 32 U. S. App. 311, 319, 15 C. C. A. 123, and 67 Fed. 975;  U. S. v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850.    In the present case the

record shows, we think, that, if Fairchild was attempting to prosecute a suit against West in his own name, he would be effectually barred of his right to the property in controversy by two adjudications which appear to have been made by the district court of Dickinson county, Iowa,—the one on November 16, 1876, and the other on October 2, 1885. The first of these adjudications was a decree in favor of West's grantors in a suit brought by them to quiet the title to the land in controversy against the claim of Fairchild and wife under the homestead entry of October 3, 1866; and the second was a judgment in favor of West in an ejectment suit brought by him against Fairchild and wife, after West had acquired the title to the property, and had been ousted from the possession thereof by Fairchild. It is suggested in behalf of the appellant that these adjudications ought not to be regarded as depriving Fairchild of his right to the land, because his title under the homestead entry, when these adjudications were made, was incomplete, and for that reason could not be asserted as a defense. The record shows, however, that his title under the homestead entry was asserted as a defense in each of said actions, and that, before either action was brought, to wit, on October 25, 1871, he made his final proof as a homesteader, and obtained a receiver's receipt entitling him to a patent; and that, before either action was brought, a patent for the land in controversy was in fact issued to Fairchild, which patent, however, was afterwards, in some manner which is not disclosed by the evidence, obtained by the officers of the land department, and marked "Canceled." It is obvious, therefore, that when the suits in the district court of Dickinson county, Iowa, were brought against Fairchild, his equitable title to the land in controversy under the homestead laws of the United States was as perfect as it could ever become, since no act remained to be done by him which would strengthen his right to a patent. Moreover, under the laws of Iowa, a suit to quiet title such as was brought against Fairchild in 1876 was then, as now, an equitable proceeding, and in 1885 a defendant in an action of ejectment was then, as now, entitled to plead any defense thereto, whether it was of a legal or equitable character. McClain's Code Iowa, §§ 3861, 4503, 4506; Rosierz v. Van Dam, 16 Iowa, 175; Van Orman v. Spafford, Id. 186; Kramer v. Conger, Id. 434; Shawhan v. Long, 26 Iowa, 488. In both of said actions Fairchild availed himself of these privileges by pleading the same state of facts constituting an equitable, if not a full legal, defense to the suits (Simmons v. Wagner, 101 U. S. 260; Nycum v. McAllister, 33 Iowa, 374), upon which the United States now relies to annul the title of the defendant West, and in both of said actions a judgment adverse to the claim of Fairchild was rendered. Inasmuch, then, as the government sues for the sole benefit of Fairchild, and for the professed purpose of reinvesting him with a title which he has lost, we are of opinion that, whether the present action be regarded as brought under the act of March 3, 1887 (24 Stat. 556, c. 376), or as brought in pursuance of its general right to sue, the government should be held estopped by the previous adjudications against the real party in interest in the state court. The subject-matter and the issue to be tried being the same in this proceed-

ing as in the former actions, the losing party on the former trials ought not to be permitted to renew the controversy in the name of a merely nominal plaintiff, and thereby avoid the effect of the former adjudications. Southern Minnesota Railway Extension Co. v. St. Paul & S. C. R. Co., 12 U. S. App. 320, 325, 5 C. C. A. 249, and 55 Fed. 690. This doctrine was applied by this court in the case of Union Pac. Ry. Co. v. U. S., 32 U. S. App. 311, 319, 15 C. C. A. 123, and 67 Fed. 975, which was a suit brought by the United States under the act of March 3, 1887, wherein we held that the United States was bound by an estoppel which might have been invoked against the real party in interest if the suit had been brought in his name, because it appeared that the United States had no substantial interest in the controversy, and was merely a nominal plaintiff.

On the argument of the case some reliance was placed by counsel for the appellant on the decision of this court in the case of U. S. v. Winona & St. P. R. Co., 32 U. S. App. 306, 15 C. C. A. 117, and 67 Fed. 969. It was contended, in substance, as we understand, that the decision in that case lends some support to the view that the United States, in the present action, is not affected by the previous adjudications in the state court of Iowa against the defendant Fairchild. With reference to such contention, it may be said that in the case last cited this court held that the bill was properly filed by the United States under the act of March 3, 1887. Indeed, no controversy arose, or could well have arisen, in that case, touching that issue, because the case was one in which the executive department of the government had erroneously certified certain lands to the state of Minnesota for the benefit of a railroad company, and there was no pretense that the legislative branch of the government had ever confirmed or ratified such erroneous action on the part of the land department. The case was one which was clearly within the provisions of the act of March 3, 1887. We were accordingly of the opinion in that case, which we still entertain, that the United States had not definitely parted with its right to the land in dispute, but had a substantial interest in the controversy, which very properly exempted it in that case from certain defenses which the railroad company might possibly have interposed as against the original pre-emption claimant. In the present case, however, as has already been shown, congress did ratify and confirm the erroneous action of the land department, doing so with full knowledge of all the facts, and by so doing it placed the government in such a position that it can no longer claim that it has any right to the premises in dispute, or any pecuniary interest in the pending action. It sues professedly for the benefit of a private individual, having been placed by the act of congress aforesaid in such an attitude that it cannot assert any right to the property in dispute on behalf of the public. We think, therefore, that the cases are clearly distinguishable; that our former ruling is in harmony with the views heretofore expressed; and that, as applied to the case in hand, our former decision does not support the contention that the United States is exempt in the present action from such defenses as res judicata, limitations, and laches, although such defenses could be successfully pleaded as against a person for

whose benefit it sues. Without considering some other questions which were decided by the trial court, it is sufficient to say that, for the reasons already stated, we are satisfied that the bill of complaint was properly dismissed, and the decree to that effect is accordingly affirmed.