Sessions v. Rice et al.

---

SESSIONS v. RICE ET AL.

1. **Practice:** CROSS-EXAMINATION OF WITNESS BY COURT: LEADING QUESTIONS. In this case the court cross-examined the appellee by leading questions, suggesting answers in his favor; but, since the answers given left appellee's testimony in chief wholly unmodified, *held* that there was no reversible error.

2. **Estoppel:** WHAT CONSTITUTES: INTENTION IN USE OF WORDS. Every person is conclusively presumed to intend to be understood according to the reasonable import of his words; and where a person's words are thus reasonably understood, and justly acted upon, by another, such person is estopped to aver to the contrary, as against the other. Accordingly, *held* that the findings of law and fact in this case were erroneous, because based on the theory that the words claimed by appellant to work an estoppel must, in order to have that effect, have been used with the actual *intention* that the other party should act upon them.

*Appeal from Polk Circuit Court.*

MONDAY, DECEMBER 13.

ACTION upon a promissory note signed by the defendants I. N. Rice & Co. and E. R. Mason. There was a trial to the court, and judgment was rendered for the plaintiff. The defendant E. R. Mason appeals.

*Whiting S. Clark,* for appellant.

*J. M. & Geo. E. McCaughan,* for appellees.

ADAMS, CH. J.—The defendant Mason pleaded, in substance, that he was merely surety upon the note, and that I.

N. Rice & Co. were principals; that after the maturity of the note the responsibility of the principal makers became doubtful, though they had still sufficient property to pay the note; that, while they were in this condition, he inquired of the plaintiff as to whether the note had been paid, and was told that it had; that he relied upon this statement, and took no steps to protect himself, as he might have done; that afterwards the principal maker became insolvent, and unable to pay the note, and that he lost the opportunity to protect himself while relying upon the plaintiff's assurance that the note had been paid; and that the plaintiff, by reason thereof, had become estopped from saying that the note had not been paid.

On the trial, Mason testified that he inquired of the plaintiff as to what situation the note was in, and informed him that he inquired because he did not want to have it coming up against him in the future, and informed him at the same time that he had attached Rice & Co. upon other indebtedness; and that the plaintiff then said that everything between him and Rice & Co. had been settled up satisfactorily to himself. The plaintiff in his testimony denied making such statement, but said that Mason said to him: "We are after Rice & Co., and you had better get there too," and that he (plaintiff) made no reply, as Mason hurried on, and he did not have time to reply.

I. The court, apprehending, probably, that the truth lay somewhere between the two witnesses, and that, while the plaintiff did not intend to represent that the note had been settled, but that he did not *need to sue*, having one good name on the note, put this question to him: "You did not say to Mason you were safe or all right?" and the plaintiff answered: "No, sir; I did not; nor to either of the Masons." The appellant complains of the asking of this question by the court, and assigns error thereon in these words: "The court erred

1. PRACTICE: cross-examination of witness by court: leading questions.

in cross-examining said Sessions with leading questions as to what he told E. R. and J. F. Mason."

The object of cross-examination is to impair or destroy the effect of what the witness had already testified to. If the court's question, then, was in proper cross-examination, the appellant should not complain. The witness cross-examined was the appellee himself, whose testimony had been wholly for himself. If the object of the court was to break down the testimony, the more leading the question the more favorable for the appellant.

We apprehend, however, after all, that the appellant's counsel does not look upon the question as put in cross-examination, but in direct examination, and in aid of the appellee. In this view only could any proper objection be interposed to the question as leading. We will look at it in this view, and try to ascertain whether the appellant has any proper ground of complaint. A question is leading which suggests the answer which the interrogator may be supposed to desire. The appellant's objection to this question is that it suggested the answer which was given, and that is, in substance, that the plaintiff did not say that he was safe or all right. But we must look at the whole examination. The witness had already testified that he made no reply. If the court desired to see if the witness would testify to anything different, then the question was asked to give the plaintiff an opportunity to say that he might have said that he was safe or all right; and so the question was hardly leading, as against the appellant. But the witness gave an answer which left his testimony wholly unmodified. The fact that he refused to change his testimony might be considered as giving it emphasis, but it would hardly be claimed that we could reverse upon such ground. We may say, further, that it appears to us that it was of but little consequence to either party which way the question was answered. An affirmative instead of a negative answer would not have supported the appellant's claim of an estoppel. There is, then, noth-

ing in the question of which the appellant can properly complain. We have said more upon this point than we should perhaps have said but for the fact that the appellant's counsel indulges in a criticism of the court which appears to us to be uncalled for.

II. The court made a finding in these words: "It is quite evident that Sessions did not intend to release Mason,

2. ESTOPPEL: and equally so that, owing to the number of
what consti-
tutes: inten- transactions, and their somewhat complicated
tion in use of
words. character, there was a misunderstanding between the parties as to what was said, to what it referred, and what was understood thereby." The court also, as a legal conclusion, as to what constitutes an estoppel, made a finding in these words: "The conduct must have been with the intention that the other party would act upon it, and the other party must have acted, or, rather, relying upon it, omitted to act."

The appellant excepted to these findings, and now assigns error thereon. The undisputed evidence, to-wit, the testimony of both the appellee and appellant, shows that the latter was endeavoring to secure, by attachment, a debt due him from Rice & Co., and that something was said in relation to the appellee's claim against the same parties. There had, it is true, been some prior indebtedness due from Rice & Co., to the appellee, which had been paid. But he knew that what Mason referred to was indebtedness which had not been paid, whether the same be more or less. We have looked in vain for any evidence that the parties misunderstood as to what was referred to. The appellee's testimony is that he made no reply whatever to Mason. If this is so, he was not misunderstood, and it was of no consequence, so far as these issues are concerned, whether he understood the plaintiff or not. The question was, did the appellee say something, and, if so, did he say something which justified Mason in inferring that the debt had been paid or otherwise provided for? The court below must have

thought that the appellee did say something, notwithstanding his denial; because, if he did not, that was an end of the case. Now, if he said anything, what does the evidence show that he said? Simply what Mason says he did, for there is no other evidence about it; and, taking Mason's statement to be true, there was no misunderstanding, unless it was in regard to the *effect* of saying what Mason testifies that appellee said. We think it probably true, as the court found, that the appellee did not intend to release Mason. But such fact does not show that the appellee is not estopped. It probably seldom happens that a person who becomes estopped by his conduct intended to estop himself. Estoppel is a legal result, entirely independent of an intention to create an estoppel.

We have, then, to say in regard to the finding of fact above set out, that a part appears to be immaterial, and the rest without support in the evidence.

We think, too, that the court erred in its legal conclusion; and that is that an estoppel arises only where the party against whom it is set up intended that his conduct, whether it consists in words or actions, should be relied upon by the other party. The test question is as to whether the party setting up the estoppel was justified in relying upon the conduct of the other party. If Mason made inquiry of the appellee as to whether the indebtedness had been paid, and the appellee told him it had, it is not now for the appellee to say that he did not understand that Mason would govern himself according to the answer, and did not intend that he should. Every person will be conclusively presumed to intend to be understood according to the reasonable import of his words; and where a person's words are thus reasonably understood, and justly acted upon by another, such person cannot be heard to aver to the contrary, as against the other. *Morgan v. Railroad Co.*, 96 U. S., 716 (720); *Continental Nat. Bank v. National Bank of Com.*, 50 N. Y., 575 (583).

It is contended by the appellee that the court did not

mean that an intention should be shown by the party sought to be estopped different from that which the other party had a right to infer from what was said and done. But we think otherwise. This appears from the fact that the court made no finding as to what the appellee said, and must have thought it immaterial. It did make a finding of a want of intention to release Mason, which is, in fact, immaterial; and made a finding of a misunderstanding, which finding lacks support in the evidence. The court should have made a finding as to whether the appellee did or did not say to Mason that the debt now sought to be enforced had been settled; and whether, if he did so say, Mason relied upon the statement to his injury, by omitting what he otherwise might and would have done for his protection.

It is contended that the judgment can be sustained by another finding, which we have not set out. That finding is in these words: "The defendant Mason has failed to prove an estoppel by a preponderance of evidence." If this finding stood alone, it would doubtless be sufficient. But it does not stand alone; it follows all the other findings, and is a conclusion based upon the others. The court had previously expressed its legal idea as to what constituted an estoppel, and wherein the facts in the case were deficient. If it erred in both, the final finding based thereon cannot properly be said to conclude the appellant.

We think that the judgment must be

REVERSED.