E. S. ELLSWORTH, Appellee, v. CAMPBELL BROTHERS & COMPANY *et al.*, Appellants.

1. **Evidence:** IMMATERIAL ERROR. Error in the admission of evidence of certain facts is without prejudice, where the same facts are abundantly established, without conflict, by other competent evidence.

2. **Sale:** ESTOPPEL TO ALLEGE CONDITIONS AS AGAINST THIRD PARTIES. The plaintiff made a conditional sale of a lot of cattle to B., who at the time drew a check for one thousand dollars upon the defendants, and gave it to the plaintiff as part payment. The next day the plaintiff wrote to the defendants that he had sold the cattle to B., that B. had drawn on them for one thousand dollars as part payment on them, and that when they arrived they would find them of excellent quality. The next day after this the defendants paid the check, as they would not have done but for the plaintiff's letter. The cattle were afterwards shipped to them by B. as the property of the plaintiff, and, including said one thousand dollars, the plaintiff received the entire net proceeds of the cattle, though much less than B. had agreed to pay him. *Held*, that he was estopped, as against the defendants, from denying that the sale to B. was an absolute one, and from asserting that they should not have credit for the one thousand dollars in accounting to him for the cattle shipped in his name.

*Appeal from Hardin District Court.*—HON. S. M. WEAVER, Judge.

WEDNESDAY, FEBRUARY 1, 1893.

ACTION against the defendants, as commission merchants, for the balance claimed to be due from them as proceeds of sales of cattle shipped by the plaintiff. There was a trial to the court, resulting in a judgment for the plaintiff. The defendants appeal. *Reversed.*

*Huff & Ward*, for appellants.

*C. E. Albrook, F. M. Williams*, and *Nagle & Birdsall*, for appellee.

KINNE, J.—The following facts are either admitted in the pleadings or established upon the trial. The plaintiff had two hundred and four fat steers on his farm in Wright county, Iowa, in June, 1890. In that month he entered into the following contract of sale with one C. M. Brown:

"That Chas. M. Brown, of the town of Iowa Falls, Hardin county, Iowa, has this day purchased of E. S. Ellsworth, of the same place, one hundred and ninety-eight (198) head of two and three years old fat steers, now being fed on the farm of E. S. Ellsworth, in section 21, township 91, range 23, Wright county, Iowa, in a lot of 204 head, at four (4) dollars per 100 weight on said farm, the freight to be paid by the said Brown, and the purchase to net the said E. S. Ellsworth $4 per 100 weight on said farm, said cattle to be weighed twelve hours off feed and water, from 7 o'clock P. M., to 2 o'clock A. M.; to be taken by the said Brown before the first day of July, 1890; and twenty-four hours' notice to be given to the said Ellsworth of the time of taking the said cattle.   And the said C. M. Brown this day makes payment on the above purchase, by check on Campbell Bros., Chicago, Ills., in the sum of $1,000, which check, if paid, is to apply on said purchase.   It is also hereby agreed by the said Chas. M. Brown that the said cattle shall be shipped in the name of E. S. Ellsworth, and the proceeds of the sale thereof to be paid to the said E. S. Ellsworth until the purchase price is paid, and the balance to be paid to the said C. M. Brown.                    C. M. BROWN.

Dated at Iowa Falls, Iowa, June 13, 1890."

The check of one thousand dollars was drawn on Campbell Bros. (defendants), was placed to the credit of the plaintiff in the First National Bank at Iowa Falls, Iowa, and on the same day forwarded by it to its Chicago correspondent for collection.   June 14, 1890,

the day after said contract had been entered into, and said check drawn, the plaintiff wrote the defendants as follows: "By the way, I made sale to Charles M. Brown, of this place, yesterday, 198 head of good cattle, to go July 1, and he drew on you for $1,000 as payment on them. When the cattle arrive you will find them of far better quality than anything that has come to you, I think, for a long time." The defendants received this letter June 15, 1890, and on the next day paid said check of one thousand dollars. The defendants, when they paid the check, had no knowledge touching the sale of the cattle, except such as the letter above set out conveyed to them. If the defendants had known, at and before they paid the check, of the terms and conditions of the contract above set out, they would not have paid it. Nor would they have paid it in advance of the cattle being shipped, but for the fact that they had received the plaintiff's letter, advising them of the sale of the cattle to Brown. The cattle remained on the plaintiff's farm until shipped by Brown. They were thus shipped by Brown in the plaintiff's name, and consigned to the defendants, at Chicago, Illinois. The cattle were shipped in three lots on June 22, 26, and July 7, 1890, with directions by letter from the plaintiff to sell the same, and to remit the net proceeds to him. The net proceeds of the first two shipments were remitted to the plaintiff, and, out of the net proceeds of the last shipment, the defendants deducted the one thousand dollars paid on the check aforesaid. The net proceeds of all the cattle was eight thousand, three hundred and thirty-three dollars and one cent, of which the plaintiff received seven thousand, three hundred and thirty-three dollars and one cent, and also the proceeds of the one thousand dollar check. The cattle sold in Chicago for over one thousand and one hundred dollars less than they weighed out at the plaintiff's farm at four dollars per hundred-

weight, as provided in his contract with Brown. Some other facts, about which some conflict exists in the evidence, we may find it necessary to allude to hereafter.

It will be observed that, including the one thousand dollar check, the plaintiff has in fact received the entire net proceeds of the sales of the cattle in Chicago. But he claims that the one thousand dollar check should not be charged to him as a part of the proceeds of the cattle sold, but that that one thousand dollars. was advanced by defendants to Brown. The plaintiff claims, *first*, that he has a vendor's lien on the cattle for the purchase price provided in his contract with Brown; *second*, that the lien of the factor or commission merchant does not attach until he gets possession of the property. The defendants claim, *first*, that the plaintiff, by his letter and conduct, is estopped from claiming anything of them by virtue of the terms of the contract with Brown; *second*, that they were entitled to a lien on the cattle as soon as they came into their hands as commission men for sale; *third*, that as the contract relied upon by the plaintiff was between him and Brown, and the defendants were not parties to it, and had no knowledge of it when they paid the one thousand dollar check, they are not bound or affected by it.

I. The court admitted in evidence, over the defendants' objection, certain pages of a book kept by

1. EVIDENCE: immaterial error.

the railroad company, wherein were copied the way bills of the cattle shipped by the plaintiff; also, as is claimed, there was admitted a copy of a telegram. We do not deem it necessary to pass upon the alleged error, as, if error, the ruling was without prejudice. The facts sought to be proved by this telegram, and the freight forwarding books, were abundantly established, without conflict, by other competent evidence.

II. In our view of this case, we need only consider

one of the questions presented, touching the merits of the controversy. The defendants pleaded an estoppel. If that has been established, it is conclusive against the plaintiff's right to recover. It is not controverted that

2. SALE: estoppel to allege conditions as against third parties.

the defendants would not have paid the one thousand dollar check, had it not been for the plaintiff's letter. If, then, they were justified in believing therefrom that Ellsworth had made an absolute sale of the cattle to Brown, then Ellsworth ought not to recover in this action. The facts touching this matter are few. The plaintiff, on June 14, 1890, and only one day after he had entered into his contract with Brown, wrote the defendants: "By the way, I made sale to Charles M. Brown, of this place, yesterday, 198 head of good cattle, to go July 1, and he drew on you for $1,000 as payment on them," etc. The plaintiff knew when he wrote this letter that there had been no absolute sale of the cattle at all. He knew that the defendants were not likely to pay Brown's check, in advance of any shipment of cattle, if they knew that Brown had only a conditional contract for them. As a business man, he must have known that the language that he used would naturally, if not necessarily, convey the idea to the defendants that Brown had made an absolute purchase of the cattle, such a purchase as would invest him with title and possession. So careful was the plaintiff to impress on the defendants the fact that he had sold the cattle, that he says, "and he drew on you for one thousand dollars as payment on them." Now, while he was informing the defendants that he had sold the cattle to Brown, he knew that, by the very terms of his contract with Brown, in no event could they ever come into the possession of Brown. They were to be fed on the plaintiff's farm till shipped; were to be shipped in his name, and the proceeds to be paid by the consignees direct to Ellsworth, until he

was paid. True, Brown was to have what was left, if anything, after the plaintiff was paid. Brown, also, was to pay the freight. As we have said, under the terms of this contract, Brown would never have possession, for one moment, of these cattle. Can it be said that, under such circumstances, the defendants were not induced to act to their detriment, and that, too, by reason of the plaintiff's statement? Good faith required of the plaintiff, when he wrote this letter, that he should have acquainted the defendants with the terms and conditions of his "sale" of the cattle to Brown. From the evidence it conclusively appears that, if he had done so, the defendants would not have advanced the one thousand dollars. It was a case where it was the plaintiff's duty to speak. He could not, after writing the defendants he had sold these cattle, close his mouth as to the real facts, and thus make it almost certain that the defendants would be misled into acting on the faith that his statement meant an absolute sale, and, hence, place themselves in a position that they would not have occupied if the plaintiff had stated the real facts to them.

The plaintiff says that the fact that Brown drew his check in favor of the First National Bank of Iowa Falls for one thousand dollars to make a cash payment on the stock did not place the plaintiff in a position where he was required to advise the defendants of the nature of the transaction between them. The proposition may be conceded, but that is an evasion of the real question. It may be that the plaintiff might have remained entirely silent, and never written the defendants about his sale to Brown, but that is not the case at bar. He did speak. He wrote the defendants touching the transaction between him and Brown, and, when he did so, it was incumbent on him to tell the whole truth about the matter. It is not a question of the technical legal meaning of the words used, but the

the question is, under the circumstances, what was the reasonable import of the words written to the defendants? *Sessions v. Rice,* 70 Iowa, 306. Were they to assume, from the language used, that the sale was one in which the possession would never be in Brown? Or were they justified in acting on the belief that such a sale was meant, as that, if they advanced the one thousand dollars to pay the check, they would have a lien on the cattle as soon as they came into their possession? We think the construction of the letter on which the defendants acted was fully warranted by the language used, when we have in view the situation of all these parties, and their relations to each other. To permit the plaintiff to recover would, in our judgment, be aiding him in the perpetration of a wrong amounting to a fraud on the defendants.

We recognize the rule settled by a long line of cases in this court, that the finding of the court stands as the verdict of a jury, and that we should not disturb the judgment below, if it finds support in the record; but in our view the evidence does not support the judgment. The estoppel pleaded has been fully established, and is a complete defense to the plaintiff's claim. Hence, the judgment of the court below must be REVERSED.