LITTLETON, CARROLL & COMPANY, Appellants, v. THE PEOPLES' BANK OF AYRSHIRE, IOWA, S. L. CLARK, JOHN CALVIN, AND M. L. ROCK.

**Construction of Writing:** GUARANTY. A bank, in forwarding a draft drawn by a shipper upon a commission firm for collection, wrote, "R. has drawn on you  *  *  *  will ship next Monday night one car load of hogs and cattle—cattle are good." The drawee knew what the drawer's business was and knew also that the bank was doing no live stock business. *Held,* the letter contained no undertaking or agreement that said shipment should be made and the bank is not liable for the difference between shipment made and draft collected.

DEEMER and KINNE, J.J., dissenting.

**Practice:** ADJUDICATION BY DEMURRER. The district court may reverse its opinion in overruling a demurrer by directing a verdict.

*Appeal from Palo Alto District Court.*—HON. GEORGE H. CARR, Judge.

SATURDAY, JUNE 1, 1895.

Plaintiffs, a copartnership engaged in the purchase and sale of live stock in the city of Chicago, state their cause of action in substance as follows: That the defendant bank is a copartnership, composed of the defendants Clark and Calvin, doing a general banking business at Ayershire, Iowa; Calvin acting as president,

and Clark as cashier thereof. That on January 27, 1893, defendant Rock executed a draft as follows: "People's Bank, Ayershire, Iowa, January 27, 1893. No. 506. Pay to the order of S. L. Clark, Cash'r, $2,230.00 (twenty-two hundred and thirty dollars). To Littleton, Carroll & Co., Union Stock Yards, Chicago, Ill. M. L. Rock." That the defendant bank, by its cashier, indorsed and forwarded said draft through other banks for collection. That, in order to induce payment of said draft by the plaintiffs, said bank, by its cashier, wrote and forwarded to plaintiffs a letter as follows: "Ayershire, Iowa, January 27, 1893. Littleton, Carroll & Co., Union Stock Yards—Gentlemen: Mr. M. L. Rock has drawn on you to-day $2,230.00. Will ship you next Monday night, or Tuesday morning, one car of hogs and one of cattle. Cattle are good. Yours respectfully, S. L. Clark, Cashier." Plaintiffs allege that said draft was not drawn in consideration of any existing indebtedness, but upon the consideration expressed in said letter; that, after the receipt of said letter, said draft was presented for payment, and "that, relying upon the contract, agreement, promise, and representation" of the said bank therein, plaintiffs accepted and paid said draft; that, of the stock agreed to be shipped in payment of said draft, only one car of hogs was shipped to plaintiffs, the proceeds of which amounted to one thousand and twenty-six dollars and sixty-one cents; that they received for further credit on said payment of said draft six hundred and twenty-two dollars and twenty-five cents, and that there remains due to plaintiffs five hundred and eighty-one dollars and fourteen cents; that the car of cattle promised in said letter was never shipped to plaintiffs. They ask judgment against the defendants for said balance, with

interest. The defendant Rock did not appear to the action. The other defendants demurred to the petition, "on the ground that the same does not state facts entitling the plaintiffs to the relief demanded, in this: The same does not allege any contract or promise to pay to the plaintiffs the sums of money sued for herein, and does not allege any protest or notice of nonpayment that would be sufficient to bind these defendants in any event." The demurrer was overruled, to which the defendants appearing excepted. Thereafter they answered, admitting the execution of the draft, and sending the letter as alleged, and alleging that the letter was merely a notice, sent at the request of Rock, that he had drawn the draft, and "had shipped to plaintiffs certain cars of stock then loaded and billed to plaintiffs." They allege that the same was an ordinary bank transaction, and that they in no manner guaranteed payment or became liable to plaintiffs. They allege that certain car loads of hogs and cattle were loaded at Ayershire by Rock, and consigned to plaintiffs; that afterwards, without defendants' knowledge, Rock changed the consignment of certain of the cars of cattle to another commission house in Chicago; but after the arrival of said cattle in Chicago, said Rock tendered the same to the plaintiffs, who declined to receive them, or to apply the same to the credit of Rock upon said draft. Plaintiffs, in reply, say that the issues tendered by said answer, except the allegation that the cattle were tendered to the plaintiffs, were fully determined on the demurrer. Upon these issues thus joined, the cause was tried to a jury; and, at the conclusion of the evidence for plaintiffs, the court, on motion of the defendants, directed the jury to find for the defendants, and entered judgment accordingly. Plaintiffs appeal.—*Affirmed.*

*Botsford, Healy & Healy* and *Thomas O'Connor* for appellants.

*Geo. E. Clark* for appellees.

Given, C. J.—I. Appellants contend that the court erred in directing a verdict for the defendants for two reasons, namely, that, by the ruling on the demurrer, it was determined and adjudicated that defendants were liable upon said draft and letter, and because said exhibits show on their face "a promise and undertaking and an agreement on the part of defendants." Plaintiffs, in their petition, unquestionably rest their right to recover against the defendants other than Rock solely upon the draft and letter. The single question presented by the demurrer was whether said writings contain any contract or promise upon which defendants are liable. By overruling the demurrer the court held that they did. The evidence on the part of the plaintiffs is in harmony with and fairly establishes the allegations of facts in the petition. The motion for a verdict was in the nature of a demurrer to the evidence; and, as the allegations of facts in the petition and the evidence are the same, the motion presented the same question that was raised by the demurrer. Appellees call attention to chapter 96, Acts Twenty-fifth General Assembly, providing that "when a demurrer shall be overruled, and the party demurring shall answer or reply, the ruling on the demurrer shall not be considered as an adjudication of any question raised by the demurrer." This demurrer was overruled, and the case tried before the passage of said act. We are of the opinion that the act does not apply to cases decided prior to its taking effect. See *Long v. Mellet,* 94 Iowa, 548 (63 N. W. Rep. 190). As this act must control in all cases arising under it, our conclusion is only important as applied to this and

other cases arising prior to said act. In view of these facts, it is unnecessary that we review the cases cited. The late case of *Brown v. Cunningham*, 82 Iowa, 512 (48 N. W. Rep. 1042), is identical in its facts, so far as relates to this question, with this case. Following the conclusion announced in that case, we hold that the court was not concluded by the ruling on the demurrer from sustaining defendants' motion for a verdict. In that case it is said: "We think that a court is not bound by a prior decision in a case where no rights have been acquired under it, and may change, modify, or overrule it if convinced of its error."

II. M. L. Rock was engaged in shipping hogs and cattle to the Chicago market, and was known to appellants to be so engaged. Appellees were not doing that kind of business, but exclusively a banking business, of which facts appellants were also aware. Rock, pursuing a common practice, drew on appellants as against anticipated shipments to them, and they, relying upon the shipments being made, paid the draft. If nothing more than the draft appeared, it would not be contended that appellants had reason to or did rely upon any other person than Rock that the shipments would be made. Our inquiry is whether the letter contains any promise or agreement on the part of appellees that the shipments would be made, upon which appellants had a right to rely. The letter says: "Mr. M. L. Rock has drawn upon you to-day $2,230.00." Thus far it is unquestionably a letter of advice from the bank through which the draft was made, and contains no element of promise or agreement. "Will ship you next Monday night," we think, was clearly intended and understood to refer to what Rock would do in the way of shipment. Appellants had no reason to expect a shipment of hogs or cattle from the bank. It was not in that line of business, and had not drawn on appellants on such account. Rock

was in the business.   He had drawn against future shipments, and appellants had a right to and no doubt did believe that he would make the shipments.   Here again, the letter is merely one of advice as to what Rock said he was going to do, and could not have been understood as making any contract, promise, or guaranty that Rock would make the shipments.   It was upon Rock, not upon appellees, that plaintiffs relied for the shipments; and we are in no doubt but that, confiding in Rock, the draft would have been as promptly paid without the letter as with it.   Appellants cite *Ellsworth v. Campbell*, 87 Iowa, 532 (54 N. W. Rep. 477), wherein an entirely different question was involved.

Our conclusion upon both questions discussed is that there was no error in the action of the district court, and the judgment is therefore *affirmed*.

Deemer and Kinne, J.J., dissenting.