THE OTTUMWA BELLE.

MISSISSIPPI COAL & ICE CO. v. THE OTTUMWA BELLE.

(District Court, S. D. Iowa, E. D. February 8, 1897.)

**1. EQUITABLE ESTOPPEL—MARITIME LIENS.**

Claimants, being about to purchase a vessel, and having heard that libelant company had some claim against her for supplies, wrote to it, asking if it had such a claim, and the amount thereof, but without disclosing the purpose of the inquiry. Libelant answered that it had a claim for coal, etc., furnished, amounting to about $50. Claimants, relying on this statement, purchased the vessel, and afterwards libelant libeled her for $169.77. *Held*, that libelant was estopped to claim the larger sum; that it was not necessary for claimants to disclose their reason for writing the letter; and libelant, having undertaken to answer an inquiry evidently relating to a business matter, was bound to disclose the truth.

**2. SAME—INTENT TO MISLEAD.**

An active intent to mislead is not essential to an equitable estoppel by a party's statements. If the statements were calculated to mislead, and did actually mislead, another, acting on them in good faith, and in the exercise of reasonable care and judgment, this is sufficient.

## In Admiralty.

Upon February 10, 1896, the Mississippi Coal & Ice Company, a corporation, brought its claim into this court for $169.77 for supplies by it furnished to the steamer Ottumwa Belle, between the dates of April 24 and October 2, 1895, inclusive; said steamer at and between the said dates being duly employed in the business of commerce and navigation between ports of different states of the United States upon the Mississippi river. By due process said steamer was taken into the custody of the marshal. The claimants, S. & J. C. Atlee, by due delivery bond released said steamer, and now intervene, and state: That they are the owners of said steamer. That, about October 11, 1895, said claimants were negotiating for the purchase of said steamer. That they made due examination for maritime liens against her. That, being informed that the Mississippi Coal & Ice Company, libelant herein, had or claimed to have, some demand for coal furnished said steamer, said claimants, for the purpose of arranging to pay and discharge such demand, on the ——— day of October, 1895, wrote to said libelant, asking it if it had any claim against said steamer for supplies furnished, and, if so, the amount of same. That, in response thereto, libelant wrote to claimants, informing claimants as follows: "Replying to your favor of the 9th inst., would say we are furnishing the Ottumwa Belle with coal, ice, tile, etc. They owe us an account amounting to about $50.00. Since August 8th they have been paying us cash for all goods furnished." That thereupon claimants, relying on and believing said statement to be true, and that libelant's demand was as therein stated, purchased said steamer. Wherefore said claimants allege said libelant is estopped from now making any demand in excess of the amount so by it stated in its said letter to claimants, and claimants bring into court, and have deposited with the clerk, the sum of $50, with all costs accrued up to date of such deposit, and tender same to libelant in full of said demand, and ask for release and discharge of said delivery bond. The present hearing is on exceptions filed by libelant.

Hughes & Roberts, for libelant.

James C. Davis, for claimants.

WOOLSON, District Judge (after stating the facts as above). The exceptions of libelant are (1) that the facts relied on do not constitute an estoppel, and (2) the amount tendered is not sufficient, even if the estoppel should be held well pleaded.

The first exception is argued by counsel for libelant under two heads, or subdivisions,—one being, that claimants did not disclose to libelant why they wished to have the information, and the other being that it does not appear that libelant had any reason to suppose claimants had any interest in knowing whether libelant had any claim for supplies furnished. As presented in argument, these two points may be fairly stated as declaring (1) that there existed, under the circumstances, no duty or obligation to inform claimants as to the facts concerning which the latter made inquiry, and (2) that, in claimants' pleading, it does not appear that the statements made by libelant were made with the intention that they should be relied on. According to libelant's contention, these two points are essential to an estoppel in pais. The doctrine of such estoppel has, in late years, acquired a much more extended application than formerly. In Dair v. U. S., 16 Wall. 1, 4, Justice Field, in a case where an estoppel was urged as to a contract, says:

"The ancient rules of the common law in relation to estoppels in pais have been relaxed, and the tendency of modern decisions is to take a broader view of the purpose to be accomplished by them, and they are now applied so as to reach the case of a party whose conduct is purposely fraudulent, or will effect an unjust result. It must be conceded that courts of justice, if in their power to do so, should not allow a party, who, by act or admission, has induced another with whom he was contracting to pursue a line of conduct injurious to his interests, to deny the act or retract the admission in case of apprehended loss. Sound policy requires that the person who proceeds on the faith of an act or admission of this character should be protected by estopping the party who has brought about this state of things from alleging anything in opposition to the natural consequences of his own course of action. It is, accordingly, established doctrine that, whenever an act is done or statement made by a party which cannot be contradicted without fraud on his part or injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what otherwise would be mere matter of evidence."

The doctrine, while applied, in the case just cited, to a case involving contract, is not materially changed in its wider application to things in action and personal property generally. Horn v. Cole, 51 N. H. 287; Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 125; Griswold v. Haven, 25 N. Y. 595; Sessions v. Rice, 70 Iowa, 306, 30 N. W. 735; Ellsworth v. Campbell, 87 Iowa, 532, 54 N. W. 477; Paxson v. Brown, 10 C. C. A. 135, 61 Fed. 874; Blair v. Wait, 69 N. Y. 113.

Pomeroy, in his valuable treatise on Equity Jurisprudence, defines an "equitable estoppel," or "estoppel in pais," as follows (2 Pom. Eq. Jur. § 804):

"Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might, perhaps, have otherwise existed, either of property, of contract, or of rem-

edy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

The doctrine is stated by Circuit Judge Sanborn, speaking for the circuit court of appeals for the Eighth Circuit, in Paxson v. Brown, 10 C. C. A. 135, 143, 61 Fed. 874, 881, as follows:

"No principle is more salutary, none rests on more solid foundations, than that one who, by his acts or representations, or by his silence when he should speak out, intentionally, or through culpable negligence, induces another to believe certain facts to exist, and the latter rightfully acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts, is thereby conclusively estopped to interpose such denial. This principle is salutary, because it represses fraud and falsehood. It rests on the solid foundation of our common sense of justice, which revolts at the idea of rewarding the intentional or culpably negligent deceiver at the expense of the innocent purchaser who believed him."

The first point of counsel's argument relates to whether an estoppel can exist in favor of one who has not affirmatively disclosed to the party against whom the estoppel is urged the fact of his interest in the subject-matter of the act or representation which works the estoppel. In the case at bar, were claimants, under the law, compelled to disclose, in their letter of inquiry, their interest in the subject-matter of such inquiry? No doubt such disclosure might have caused libelant to make a more careful response. Libelant was not compelled to respond. The law did not impose such duty. But libelant did respond, and undertook to declare the facts concerning which it was requested to inform claimants. Can it now deny the truth of the statements it then made? May it be permitted to prove that what it stated as true was in fact false? The effect, as counsel urge, of a disclosure by claimants as to their interest in making the inquiry, would have been to advise libelant that claimants would probably act upon the response, and that, so far as libelant was advised, the inquiry came from a mere "busybody," or was induced by a desire to obtain "information upon which to place an estimate of the amount of credit the boat or its owners were entitled to." If the latter, then libelant was advised that the response was made as a basis for business action by claimants. But the transaction itself was sufficient to advise libelant that the letter was not a "mere busybody" inquiry. Here was a business firm, in a near-by city, writing a letter which, upon its face, is apparently about a business matter. Is the court to assume that business men write, or that business men receive, such inquiring letters as a matter of mere curiosity, without a desire to use, or a reasonable expectation that use will be made of, the response as a basis for action in business matters? Libelant, while not required to respond, did respond.

In Ellsworth v. Campbell, 87 Iowa, 532, 537, 54 N. W. 477, 478, the court say:

"It may be that the plaintiff might have remained entirely silent, and never written the defendants about his sale to Brown; but that is not the case at bar He did speak. He wrote the defendants touching the transaction between him and Brown, and, when he did so, it was incumbent on him to tell the whole truth about the matter."

There seems no reasonable conclusion, from the circumstances, but that libelant, when writing the response, regarded the inquiry as relating to business matters, and answered it as such. A disclosure by claimants of their reason for writing the letter was not required to impose on libelant the duty of stating the truth in whatever response it made.

Is it essential to an equitable estoppel that the party sought to be estopped by his statements must have intended that they should be relied on? This is the second point presented. The inquiry is pertinent here, why did libelant respond at all, if he had no intention or expectation that his response would be relied on? What other intention or expectation could libelant have reasonably entertained under the circumstances? The authorities are numerous, however, which hold that an intention to have his statements relied on is not essential to an equitable estoppel.

In Horn v. Cole, 51 N. H. 287, the supreme court of New Hampshire, speaking through Perley, C. J., say:

"If the representations are such, and made in such circumstances, that all persons interested in the subject have the right to rely on them as true, their truth cannot be denied by the party that has made them, against any one who has trusted in them and has acted on them."

In the same opinion the court say:

"Where a man makes a statement in a manner and under circumstances such as he must understand those who heard the statement would believe to be true, and, if they had an interest in the subject-matter, would act on as true, and one, using his means of knowledge with due diligence, acts on the statement as true, the party who makes the statement cannot show that his representation was false, to the injury of the party who believed it to be true, and acted on it as such; that he will be liable for the natural consequences of his representation, and cannot be heard to say that the party injured was not the one he meant should act."

Continental Nat. Bank v. National Bank of Commonwealth, 50 N. Y. 575, 582, involving the doctrine of estoppel in pais with regard to the oral declaration of plaintiff's teller that the certificate (afterwards discovered to be forged) was "all right," contains a discussion as to whether the intent to mislead is an essential element in such estoppel. The court, speaking through Judge Folger, cite with approval the language used in Freeman v. Cooke, 2 Exch. 654, wherein is explained the decision of the court in the leading case of Pickard v. Sears, 6 Adol. & E. 469. In the last-named case the court say:

"Where one, by his words or conduct, willfully causes another," etc.

In Freeman v. Cooke, the court say:

"By the term 'willfully,' however in that rule, we must understand, if, whatever a man's real intentions may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and he did act upon it, as true, the party making the representation would be equally precluded from contesting its truth; and conduct by negligence or omission, where there is a duty cast upon any person, by usage of trade or otherwise, to disclose the truth, may often have the same effect."

So, in Cornish v. Abington, 4 Hurl. & N. 549, Pollock, C. B., says:

"The jury having found that the defendant, whether intentionally or not, led the plaintiff to form an opinion that he was dealing with the defendant, and induced him to furnish goods to the defendant, the defendant must pay for them."

In the same case Chief Baron Pollock, commenting on the term, "willfully," as used in Pickard v. Sears and Freeman v. Cooke, supra, construes such word as meaning nothing more than "voluntarily," and holds that, if the representation was made voluntarily, though the effect upon the hearer was produced unintentionally, the same result would follow, and that, if a party uses language which, in the ordinary course of business, and the general sense in which words are understood, conveys a certain meaning, he cannot afterwards say that he is not bound, if another, so understanding it, has acted upon it.

"Of course," adds the New York court, "this general language, here extracted, should be read in connection with the facts of the case, to prevent carrying the force of the words too far. But it is shown that 'willfully,' and 'voluntarily,' as used in the definition of 'estoppel,' are convertible."

On page 583, Judge Folger announces the holding of that court:

"We hold that there need not be, upon the part of the person making the declaration or doing an act, an intention to mislead the one who is induced to rely upon it. * * * And it has long been held that, where it is a breach of good faith to allow the truth to be shown, there an admission will estop."

Bank v. Hazard, 30 N. Y. 226, 230, was a case relating to protest of a note, where an indorser, now sought to be charged, set up as his defense that notice of protest had not been given to him. His name was M. Hazard. His signature as indorser was so written that the jury found the notary protesting the note, and unacquainted with the signature, was justified in reading it as A. C. Hazard, and had duly sent notice of protest to that name. The court held that the indorser, by having thus signed his name, was estopped to claim that the notice was not duly given. In the opinion the court say:

"It is not necessary to an equitable estoppel that the party should design to mislead. If his act was calculated to mislead, and has actually misled another, acting upon it in good faith, and exercising reasonable care and diligence, under all the circumstances, that is enough."

The supreme court of Iowa, in Tiffany v. Anderson, 55 Iowa, 405, 407, 7 N. W. 683, 685, had occasion to pass directly upon the point as to whether there must exist, in an equitable estoppel, an intent, on the party sought to be estopped, that the other party should act on his conduct. In that case the conduct charged as estopped was silence,—a failure to declare his interest in property sold in his presence. The court say:

"The court instructed the jury that, in order to create an estoppel by the conduct of defendant, he must have intended that the plaintiff should act upon such conduct. In this, as in all other cases, the acts and language of a party must be interpreted according to his real intentions. But intentions may be inferred when not clearly expressed. And if language or acts would authorize a reasonable person to infer that certain intentions existed, the law will presume their existence, and the party will be bound thereby."

Sessions v. Rice, 70 Iowa, 306, 309, 30 N. W. 735, 737, involved the consideration of estoppel as urged by a surety against the payee of a promissory note who was seeking to hold the surety to payment. The court below found, as a conclusion of law, as to what constitutes an estoppel:

"The conduct must have been with the intention that the other party would act upon it, and the other party must have acted," etc.

The supreme court say:

"We think it probably true, as the court found, that appellee did not intend to release [the surety]. But this fact does not show that the appellee is not estopped. * * * We think, too, that the court erred in its legal conclusion, and that is that an estoppel arises only when the party against whom it is set up intended that his conduct, whether it consists of words or actions, should be relied upon by the other party. The test question is as to whether the party setting up the estoppel was justified in relying upon the conduct of the other party. * * * Every person will be conclusively presumed to intend to be understood according to the reasonable import of his words, and when a person's words are thus reasonably understood and justly acted upon by another, such person cannot be heard to aver to the contrary, as against the other."

In Paxson v. Brown, 10 C. C. A. 135, 143, 61 Fed. 874, 881, the circuit court of appeals for this circuit have substantially excluded from the essential elements of an equitable estoppel an active intent to mislead, or to have the act relied upon by the party who is misled. In that respect intent to mislead and culpable negligence are placed on the same footing. The court declare, as to this estoppel, that:

"It rests on the solid foundation of our common sense of justice, which revolts at the idea of rewarding the intentional or culpably negligent deceiver at the expense of the innocent purchaser who believed in him."

In Union Pac. Ry. Co. v. U. S., 15 C. C. A. 123, 67 Fed. 975, 979, the circuit court of appeals of this circuit reaffirm and expressly approve the doctrine as announced in Paxson v. Brown.

In Dickerson v. Colgrove, 100 U. S. 578, 580, the supreme court say:

"The estoppel here relied upon is known as an equitable estoppel, or estoppel in pais. The law upon the subject is well settled. The vital principle is that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. The remedy is so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit. It is akin to the principle involved in the limitation of actions, and does its work of justice and repose where the statute cannot be invoked."

With reference to the significance of the term "fraud" or "fraudulent," as used by various courts in speaking of equitable estoppels, Pomeroy (2 Pom. Eq. Jur. § 803) says those terms, thus used, are virtually synonymous with "unconscientious," or "inequitable," and that "it is in strict agreement with equitable notions to say, of a party sought to be estopped, that his repudiation of his own prior conduct, which had amounted to an estoppel, and his assertion of claims notwithstanding his former acts or words, would be fraudulent,—would be a fraud upon the rights of the person benefited by the estoppel." And he declares that it would be accurate to describe,

in general terms, an equitable estoppel as "such conduct by a party that it would be fraudulent, or a fraud upon the rights of another, for him afterwards to repudiate, and to set up claims inconsistent with it." This learned author sums up his discussion by saying:

"When all the varieties of equitable estoppel are compared, it will be found, I think, that the doctrine rests upon the following general principle: When one of two innocent persons—that is, persons each guiltless of an intentional, moral wrong—must suffer a loss, it must be borne by that one of them who, by his conduct, acts, or admissions, has rendered the injury possible."

The last exception urged by libelant is, as to tender by claimants made and deposited, that it is insufficient. In my opinion this exception cannot be sustained in the present state of the case. The letter of libelant states the account owing to him as "about fifty dollars." When the evidence is all before the court, and the case submitted for final judgment, this exception may then be presented, if libelant be so advised. Subject to such reserved right, this exception is overruled.

It follows, from the foregoing, that all the exceptions filed by libelant are overruled. Let order be entered accordingly, to which libelant excepts.