H. L. KIRCHMAN v. STANDARD COAL COMPANY *et al.,* AND D. C. BRADLEY, Appellant.

**Payment:** NOVATION. Plaintiff furnished labor and materials in the improvement of a mine, and agreed with the company's general manager that he would take the price therefor from a store owned by a partnership composed of the general manager and his brother, but it was not agreed that the price for his work should be paid to the partnership. Plaintiff purchased goods of the store to the value of his claim, but was held liable for such debt in an action by the receiver of the firm. *Held,* not to constitute a payment of the debt due plaintiff, which would prevent him from obtaining a mechanic's lien on the mine, since the agreement with the general manager did not constitute a novation.

.Estoppel to Assert Lien: Plaintiff furnished labor and materials for the improvement of a mine, and agreed with the general manager of the company that he would take the price therefor from a store owned by a partnership composed of the general manager and his brother. but it was not agreed that the company should pay the partnership. Plaintiff purchased goods at the store to the value of his claim, and, on a receiver being appointed for the firm, he was sued for the amount due the firm. Before the termination· of such suit against the plaintiff, he stated to A. that his claim against the coal company was settled, but he did not know at the time that A. intended to purchase the mine, or had any interest therein. *Held*, not to estop plaintiff from asserting the mechanic's lien against the mine after it had been purchased by A.

.Appeal: STATEMENTS IN ABSTRACT: *Trial de novo.* Under Code. section 4119, and Supreme Court Rule 22, providing that the abstract will be presumed to contain the record unless denied or corrected by subsequent abstracts, a trial *de novo* of an equity case on appeal will not be denied because the abstract fails to state that it includes all the evidence.

:SAME: *Denials.* Under Code, section 4118, and Supreme Court Rule 22, providing that the abstract will be presumed to contain all the record unless denied or corrected by subsequent abstracts, a trial *de novo* of an equity case on appeal will not be denied because the abstract does not allege that the evidence was certified by the trial judge, and made of record, as required by Code. section 3652, since such certificate, etc.. is not jurisdictional.

.*Same.* The supreme court is not divested of authority to hear an equity cause on appeal by the fact that appellee's abstract denies that appellant's abstract contains all of certain testimony, since the appellant is required only to include the parts of the testimony which he deems material; and a specific objection that the abstract is untrue, or a correction by an additional abstract, is the only way to object to an omission therein.

*Appeal from Appanoose District Court.*—HON. M. A. ROB- ERTS, Judge

TUESDAY, JANUARY 15, 1901.

This is an action to foreclose a mechanic's lien for labor and materials upon certain mining property owned by the Standard Coal Company at the time the contract for the labor and materials was made, but now belonging to defendant Bradley. Bradley resists the enforcement of the lien, alleging: First, that the claim on which it is based has been paid; and, second, that plaintiff is estopped, as against him, by certain statements, made to him before he bought the property, that the claim had been satisfied. The court rendered a decree foreclosing plaintiff's lien against both the Standard Coal Company and defendant Bradley for the amount thereof. From this decree, defendant Bradley appeals.—*Affirmed.*

*Mabry & Payne* for appellant.

*A. J. Baker* for appellee.

McClain, J.—Appellee insists that this case is not triable *de novo,* because it does not appear that appellant has presented in his abstract all the evidence offered in the trial of the case in the lower court, nor that the evidence was preserved and certified as required in equity cases. Prior to the adoption of the present Code, the want of such affirmative statements in the abstract would, no doubt, have been a sufficient ground for refusing to try the case anew; but it is now provided by Code, section 4118 (embodied in rule 22 of this court), that the abstract "shall be presumed to contain the record unless denied or corrected by subsequent abstract," and this presumption goes to the sufficiency of the abstract as embodying all the evidence. *McGillivary v. Case,* 107 Iowa, 17. It seems to us that this presumption goes also to the sufficiency of the steps required to make the evidence of record, for it implies the existence of a proper record, such as may be considered on appeal. Why

should it be necessary to formally allege that the evidence was certified by the trial judge, and the certificate made of record, as contemplated by the Code, section 3652 ? Such proceeding is not jurisdictional, as is the service of notice of appeal, but is only required in order to secure a particular method of review. The steps must be taken for this purpose, but we think they must be presumed to have been taken, although not affirmatively shown, until appellee raises the objection in some competent manner. In this case the objection that the evidence was not properly preserved and certified is presented in argument only. Appellee does, indeed, in his abstract deny that certain exhibits and testimony are fully contained in appellant's abstract, but appellant is only required to set out so much as he may deem material. If appellee considered other parts material, he should have set them out. We are not precluded from considering the parts which are set out by reason of the fact that they are alleged to be incomplete. As a matter of fact, appellee does set out additional matter, but further denies that the abstract of appellant, with the additions made in appellee's abstract, presented all the evidence. As to this denial, it is enough to quote from a recent case: "Denials and counter denials in abstracts do not have the same effect under the new rules as under the old. All specific denials are now settled by a transcript." *Haney & Campbell Mfg. Co. v. Adaza Co-Op. Creamery Co.,* 108 Iowa, 313. The general allegation that the plaintiff's abstract, together with the matter presented by appellee in his abstract, does not show the entire evidence, no longer makes it necessary for the court to go to the transcript. "If a defect exists in the way of an omission, or if extraneous matter is included, or if the abstract is untrue in any respect, or if not properly certified to be full and complete, this must be brought out by specific denial, or corrected by an additional abstract; else it will be deemed to have been waived, and the abstract conceded to be true, and sufficient to enable the court to cor-

rectly determine every question made in argument." *Mc-Gillivary v. Case, supra.* And see *King v. Hart,* 110 Iowa, 618. Proceeding, then, to consider the case on its merits, we find two questions: First, has plaintiff's claim been paid and satisfied? and, second, is plaintiff estopped to enforce his claim as against defendant Bradley?

I. The claim of satisfaction is based on the following state of facts, as to which there is no controversy: Plaintiff entered into an oral agreement with the Standard Coal Company, through its general manager, George Merritt, to perform labor and furnish materials in the improvement of the equipment of the mine, which labor and materials constituted the basis of the account on which the mechanic's lien is claimed. But at the same time said Merritt urged upon plaintiff his desire that the amount of plaintiff's charges under this oral agreement should be traded out at a store operated by said Merritt and his two brothers under the firm name of Merritt Bros., and this arrangement plaintiff seems to have substantially assented to, although he claims in his testimony that it was not a binding agreement. Plaintiff did, however, on his own account and by orders given to his employes, make purchases at the store of Merritt Bros., to an amount slightly exceeding the amount of the account here sued upon. But in a suit by the assignee of the firm of Merritt Bros. against the plaintiff in this case to recover the amount of his indebtedness to the firm he was held liable therefor, and judgment was rendered against him, notwithstanding the defense set up in his answer that the goods charged to him were received on his account against the Standard Coal Company. In this suit Bradley, who had in the meantime become the purchaser of the coal mine at a receiver's sale, sought to intervene, but his petition was stricken from the files, and he in no way became a party to the adjudication. The question, then, is whether there was such an agreement between plaintiff and the Standard Coal Company, through

its general manager, George Merritt, that goods furnished to plaintiff by Merritt Bros. in person or on his order should be applied as credit on plaintiff's account against the Standard Coal Company. It does not appear that the firm of Merritt Bros. was any party to this agreement. The most that can be claimed is that there was an understanding that plaintiff should be a customer at the store of Merritt Bros., and should make purchases there substantially to the amount of his account against the Standard Coal Company; but there is not the slightest evidence of any agreement that Merritt Bros. should look to the Standard Coal Company, and not to plaintiff, for payment. Indeed, the custom under previous similar arrangements had been for plaintiff to bring in his account against the Standard Coal Company, and for the firm of Merritt Bros. to bring in their account against plaintiff, and that the balance one way or the other should be paid in cash; and it does not appear that there was any custom whatever, nor any understanding that Merritt Bros. should look to the coal company, except as there should be final adjustment of accounts in this manner. To constitute a novation by which the Standard Coal Company should become bound to Merritt Bros. for the amount of plaintiff's indebtedness to the latter in discharge of plaintiff's claim against the coal company would require a mutual assent of the three parties to the transaction. *Argyle Co. v. McNeill,* 153 Ill. 669 (39 N. E. Rep. 1102) ; *Ice Co. v. Potter,* 123 Mass. 28; *Murphy v. Harnahan,* 50 Wis. 485 (7 N. W. Rep. 436), 2 Wharton Contracts, sections 853, 855. Without such mutual agreement, there would be no consideration for the release of the coal company by the plaintiff, because the consent of Merritt Bros. was essential to the discharge of plaintiff's indebtedness to the firm. If it should be claimed that George Merritt, as manager of the coal company, and at the same time a member of the firm of Merritt Bros., by his agreement with plaintiff bound the firm of Merritt Bros. to look to the coal com-

·pany for their account against plaintiff, and at the same time bound the coal company to pay Merritt Bros. the amount of plaintiff's indebtedness to the latter, it may be considered that no such agreement is shown; nor, if shown, would it be valid, for George Merritt could not at the same time represent and bind the firm and the company in a transaction involving a contractual relation between them; and whether the arrangement was one made beforehand with reference to accounts to be afterwards incurred, or one made after the accounts had been incurred and relating to their settlement, the assent of both Merritt Bros. and the coal company to the agreement was necessary. Therefore the claim of Merritt Bros. against plaintiff was not released, and consequently there was no consideration for any agreement on the part of plaintiff to receive the goods procured by him from Merritt Bros. in payment of his claim against the coal company. Consequently, the claim has not been paid.

II. The claim of estoppel is based upon an alleged statement made by Kirchman to Bradley, prior to the judgment against Kirchman in favor of the assignee of Merritt Bros., and during the time that the receiver had charge of the property of the Standard Coal Company, to the effect that plaintiff's claim against the coal company, for which a mechanic's lien appeared on file, had been paid. Bradley claims to have subsequently bought the mine at a receiver's sale in reliance upon this statement of Kirchman that his mechanic's lien had been satisfied, and says that, had he known that this mechanic's lien was unsatisfied, he would not have made the purchase. The evidence about this alleged conversation is conflicting, and, if the trial court had made a finding one way or the other, we should have been inclined to support its conclusion; but the finding was that, even if there was such conversation, the alleged statement of plaintiff did not constitute an estoppel, and we prefer to dispose of the case by considering the ques-

tion actually decided.  In order that statements which are untrue shall estop the party making them from afterwards showing their truth, it must appear that under the circumstances he was bound to speak the truth, and that the party insisting upon the estoppel relied upon the false statement to his material prejudice.  The duty to speak truly may exist with reference to the whole world,—as where the owner of property allows another to hold himself out as owner; and in such a case, no doubt, the real owner is estopped as to any one dealing with reference to the property to set up his ownership to the latter's prejudice.  *Wendell v. Van Rensselaer,* 1 Johns. Ch. 344; *Banking Co. v. Duncan,* 86 N. Y. 221; *Chapman v. Chapman,* 59 Pa. St. 214.  There might be other cases in which the circumstances would impose a duty to speak for the protection of the public in general.  On the other hand, the duty to speak truly may arise from the fact that the party speaking knows, or has reason to suppose, that the person to whom the statement is made intends to act or rely thereon.  Such a case is that of *Sessions v. Rice,* 70 Iowa, 306, where it is held that, if the holder of a note states to one who is surety thereon that it has been paid, and thereby the surety is led to omit taking steps against the principal to protect himself, such holder is estopped from enforcing the note against the surety.  It is no doubt true that in such cases as those mentioned the intent of the person making the statement may be immaterial, and he may be estopped, although he has spoken in forgetfulness or ignorance of the facts; for, as between two innocent persons, he should suffer who has by his words or conduct brought about the injury which must be borne by one of them.  *Sessions v. Rice, supra; Hill v. Epley,* 31 Pa. St. 331; *Martin v. Railroad Co.,* 83 Me. 100 (21 Atl. Rep. 740) ; *Continental Natl. Bank v. National Bank of Commonwealth,* 50 N. Y. 575.  Moreover, one who makes statements intended to deceive another, and thereby influences him to his prejudice, should plainly be

estopped from denying the truth of his statements. On this principle it is held that one who knows, or has reasonable ground to believe, that another is about to act in reliance upon his statement with reference to his rights, or on his omission to assert his rights, is estopped from setting up any claim inconsistent with that which the latter has thus been led to believe was the truth, for the intent to defraud is to be inferred. *Tiffany v. Anderson,* 55 Iowa, 405; Ellsworth v. *Campbell,* 87 Iowa, 532; *Blair v. Wait,* 69 N. Y. 113. But none of these cases, nor any which we have been able to find, go so far as to hold that a mere random statement, made without any fraudulent intent, to one who, so far as the speaker has any reason to know, is without present or prospective interest in the matter referred to, will estop the speaker from afterwards asserting against the person to whom the statement is made any rights which he may have had, even though such rights are inconsistent with his statement. Any such rule would be unreasonable and unjust; and its unreasonableness and injustice could not be better shown than by its application to this case. Kirchman was asked about his claim against the coal company by Bradley, who, so far as the former knew or had reason to know, was an entire stranger to the matter. Bradley did not indicate in any way that he asked the question with intention to act upon it, and Kirchman had not the slightest ground to suppose that he would act upon it. The answer of Kirchman to the effect that the claim had been paid, was, as he then believed, entirely true. It matters not now whether this answer was based upon mistake of fact or mistake of law. It was made in good faith. If he had known that Bradley intended to become a purchaser of the property, it might, perhaps, have been his duty to go further, and explain the facts as to the account of Merritt Bros., which he supposed to constitute payment, in order to avoid being estopped by his plain and unqualified statement; but he was certainly under no obligation to go into that

matter with a mere stranger to the subject, who, so far as he had reason to know, was making the inquiry out of mere idle curiosity. Kirchman, therefore, did not make a statement with intent that it be acted upon, nor did he have reason to suppose that the person to whom it was made would rely upon it, and he is, therefore, not bound by it. We have assumed the facts as to the estoppel as strongly as possible against Kirchman in any view whatever which could be taken of the evidence, and find that no estoppel is shown.—Affirmed.